483 A.2d 1355

**In the Matter of the ADOPTION OF G.T.M.**

**Appeal of CHILDREN'S SERVICES OF ERIE COUNTY.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 1984.

Decided Nov. 20, 1984.

William A. Dopierala, Erie, for appellant.

Gary Eiben, Erie, for M.A.M.W.

Jeffrey A. Connelly, Erie, for G.T.M.

Before NIX, C.J., and LARSEN, FLAHERTY, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court

which reversed [1] a decree of the Court of Common Pleas of Erie County terminating parental rights of the appellee-mother, M.A.M.W., with respect to her seven-year-old son, G.T.M. A petition to terminate parental rights had been filed by the appellant Children's Services of Erie County, and, after hearings were conducted, the Court of Common Pleas, Orphans' Court division, issued a decree terminating appellee's parental rights pursuant to the Adoption Act of 1980, 23 Pa.C.S.A. § 2511(a)(1), (2), (5) (1984 Supp.). The issue on appeal is whether the Orphans' Court erred in determining that statutory grounds for termination were established by the evidence.

In cases where there has been an involuntary termination of parental rights by the Orphans' Court, the scope of appellate review is limited to the determination of whether the decree of termination is supported by competent evidence. *In re Adoption of B.D.S.*, 494 Pa. 171, 177, 431 A.2d 203, 206 (1981). If the decree is adequately supported by competent evidence, and the chancellor's findings are not predicated upon capricious disbelief of competent and credible evidence, the adjudication of the Orphans' Court terminating parental rights will not be disturbed on appeal. See *In re Adoption of M.M.*, 492 Pa. 457, 460, 424 A.2d 1280, 1282 (1981). It is established that, in a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re T.R.*, 502 Pa. 165, 166, 465 A.2d 642, 642–643 (1983).

A review of the evidence presented in the instant proceeding reveals that the decree of termination was supported by clear and convincing evidence. It is undisputed that, at the time when a petition for termination of parental rights was filed, the subject child had been under foster care, arranged through the Children's Services agency, for a period much in excess of six months. The Adoption Act provides that,

---

1. *Adoption of M.,* 321 Pa.Super. 496, 468 A.2d 1098 (1983).

when a child has been placed under the care of a Children's Services agency for a term in excess of six months, parental rights may be terminated if the conditions which led to the removal of the child from the care of the parent are not likely to be remedied within a reasonable amount of time. 23 Pa.C.S.A. § 2511(a)(5).[2] This provision was added to the Adoption Act, effective January 1, 1981, as an expansion of the grounds for involuntary termination which previously existed. Although there is great reluctance to sever the parent/child relationship, due to the finality of such an adjudication, and because of the risks inherent in investing the "social superstructure" with such a power, the legislature has provided grounds to facilitate termination in foster care situations where resumption of proper care by the parent will not occur within a reasonable period of time. On the basis that the requirements of this statutory provision were satisfied by the evidence, the Orphans' Court decreed that appellee's parental rights were terminated.[3]

---

**2.** 23 Pa.C.S.A. § 2511(a)(5) provides as follows:
**§ 2511. Grounds for involuntary termination**
(a) **General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

.    .    .    .    .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

**3.** The Orphans' Court also determined that two other grounds for termination were proven, to wit 23 Pa.C.S.A. § 2511(a)(1) (settled purpose of relinquishing parental claim or failure to perform parental duties) and 23 Pa.C.S.A. § 2511(a)(2) (parental incapacity and neglect). The grounds enumerated in the Adoption Act for extinguishment of parental rights are alternative in nature, and, having determined that the grounds set forth in 23 Pa.C.S.A. § 2511(a)(5) supra. are supported by the evidence, we need not address alternate grounds upon which termination could have been predicated.

Testimony presented at the hearings in this matter showed that, in connection with the G.T.M. case, Children's Services worked with appellee from August of 1979 until the petition to terminate parental rights was filed in June of 1981. Children's Services had been involved with appellee since a time prior to G.T.M.'s birth, in connection with another of appellee's children, but in August of 1979 the agency became involved with G.T.M.'s case as a result of appellee's emotional instability, and a lack of adequate care for G.T.M. The latter problem included inadequate nutrition and clothing, unsanitary roach-infested living conditions, a lack of immunizations, and a serious lack of proper supervision and discipline for the child. There ensued two occasions on which the staff of the Gertrude Barber Center in Erie for special needs children noticed that G.T.M., who was a student there, had received burns upon his body. An investigation revealed that the burns had been incurred at the child's home, one burn having been inflicted by a cigarette, and the other the result of contact with a stove. Although the burns may have been accidentally caused, this never being clearly determined, the burns had not been treated by appellee in a sanitary fashion. After investigations of these burn incidents had been concluded, in September of 1979, appellee voluntarily placed G.T.M. into the custody of Children's Services for placement into a foster home.

At the time of this voluntary placement into foster care, appellee admitted to the caseworker that she had an easily upset temper and that she had hit the child with a leather belt on occasions when she had lost her temper. Appellee stated that she could not control her temper, or her child, and that she did not want to do more harm to the child. Appellee admitted that she was suffering from nervous instability and expressed an inability to further cope with the child. Subsequent to the voluntary placement, the situation in the home showed no improvement, despite the efforts of Children's Services to be of assistance. Thus, in

October of 1979, G.T.M., who was then approximately three years old, was adjudicated dependent.

In November of 1979, a dispositional hearing was held, and the court ordered that supervised visitations between appellee and the child were to occur on a monthly basis and that such visitations could be increased if the visitations went well. However, of the sixteen visits that were scheduled between November of 1979 and October of 1980, appellee kept only eight. Seven were cancelled by appellee, often for reasons which demonstrated that appellee placed a very low priority upon her visits with the child. Only one visitation was cancelled by Children's Services. During such visits as did occur, however, there was very little interaction between appellee and G.T.M., and appellee demonstrated a continuing inability to discipline the child. Further, she did not initiate play or contact with the child and easily lost her temper with the child during the visits.

Children's Services attempted to involve appellee in parenting classes and family counselling, and made initial appointments and provided transportation, but appellee refused to attend these sessions. Subsequently, in September of 1980, the court directed that, in addition to the visitations previously ordered, appellee should participate in parenting classes and receive individual counselling. Because appellee is of limited intellect, the caseworker selected parenting classes specially adapted for persons with such incapacities. Nevertheless, appellee attended only three of six scheduled classes, and demonstrated that she absorbed very little of the information presented at those sessions. With regard to the counselling, arrangements were made by Children's Services, but appellee dropped out of counselling after attending only one session and refused help offered to her. Appellee was warned that if she did not cooperate with Children's Services and show more interest in the child, a petition to terminate parental rights would be filed by Children's Services. A petition to terminate appellee's parental rights was filed in June of 1981.

The child in question has severe behavior problems, and, at school, has been observed to be noncompliant, lapsing into frequent temper tantrums, which involve screaming, biting, hitting, scratching, and swearing. A school psychologist testified that the child has visual-motor and language development delays, related to having been exposed to a lack of care in an inadequate home environment. Another psychologist, a clinical psychologist, testified at the termination hearing that the child is of borderline intellectual development, having a minimal brain dysfunction. The child is hyperactive, distractable, impulsive, and has limited intelligence in addition to having brain damage. The clinical psychologist expressed his opinion that, because of these behavior problems, the child would be a difficult one for anyone to manage.

Appellee and her husband, whom appellee married in June of 1980, were also examined by the clinical psychologist. Appellee's husband, who is not the father of G.T.M., was diagnosed as being of limited intellectual development, with a low tolerance for frustration, and likely to be of little help to appellee in fulfilling her parental function. G.T.M.'s natural father has, for a long period of time, been in absentia, and has told appellee that he wants nothing further to do with the child. With regard to the psychologist's examination of appellee, appellee was found to be emotionally unstable and intellectually limited, having a potential to inflict physical abuse when highly frustrated. The psychologist concluded that there was a poor prognosis for appellee to fulfill a parental role for G.T.M.

At the time of the termination hearing, appellee had moved to a different residence from the one where she lived when G.T.M. was placed into foster care. Although the new residence was more sanitary than the prior one, the court which terminated appellee's rights determined that the fundamental problems which led to placement of the child were not going to be resolved, and that the needs and welfare of the child would best be served by termination of appellee's parental rights in accordance with 23 Pa.C.S.A.

§ 2511(a)(5) supra. Although appellee and her husband testified that they would properly care for G.T.M. if the termination petition were denied, the court found their testimony to be unworthy of belief. In this regard, the court stated in its opinion,

> [Appellee] and her husband ... testified with a veneer that indicated that possibly [appellee] had improved in her way of life, but frankly this veneer was completely shattered by the testimony of [appellee] near the end of her stay on the witness stand when counsel for the child questioned her about her attitude and [obscene and threatening] remarks made by her and her husband in the Court House at the conclusion of the August hearing and at a recess at the April hearing. These remarks convinced the Court that no credibility could be given to the testimony of either herself or her husband.

It is well established that, in proceedings for termination of parental rights, the trial court, as trier of fact, is the sole judge of the credibility of witnesses. *In re Green,* 486 Pa. 613, 619, 406 A.2d 1370, 1373 (1979); *Adoption of S.H.,* 476 Pa. 608, 611, 383 A.2d 529, 530 (1978).

█ In addition to finding unworthy of belief the testimony of appellee and her husband that they would reform their behavior to provide proper care for G.T.M., the court found that appellee had, by her actions, demonstrated a lack of interest, willingness, and ability to cope with the child in question.[4] The testimony heretofore recounted is replete

---

4. Superior Court, in reversing the court below, placed much importance upon the fact that, at the time of the termination hearing the appellee was reasonably caring for a ten month old infant, though appellee had been lax in securing immunizations for that infant. The issue in this case, however, is not whether appellee is capable of caring for that infant, but rather whether she will properly care for her son G.T.M., whom she has repeatedly failed to care for in the past, who has special problems, and who is well beyond the infant stage, being seven years old at the time of the termination order. Superior Court denied, after its decision was rendered, a petition to supplement the record, pursuant to Pa.R.A.P. 1926, to reflect the alleged fact that the infant had been, subsequent to the instant termination hearing, adjudicated dependent and placed under foster care following incidents in which it was severely abused. The fact that appellee was giving

with support for these findings, and provides no significant basis upon which the court could have concluded that appellee would properly care for G.T.M. in the future. Indeed, appellee has repeatedly shown, over an extended period of time, that her own incapacities, temperament, behavior, and priorities are incompatible with meeting the special needs of a child with G.T.M.'s deficiencies. Under these circumstances, it was clearly and convincingly shown that the applicable statutory prerequisites to termination were established by the evidence.

Order of Superior Court reversed.

NIX, C.J., concurs in the result.

McDERMOTT, J., did not participate in the consideration or decision of this case.

reasonable care to an infant, at the time of the termination hearings, was not contrary to the court's findings that she would not, in view of her past record of performance, provide proper care for G.T.M.