501 A.2d 1105

**In re ADOPTION OF FAITH M. and Victoria M.**

**Appeal of Paula D. COSNEK.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1985.
Decided Dec. 6, 1985.

Stewart Barmen, William Bresnahan, Ronald G. Backer, Denise L. Wilsher, Rothman, Gordon, Foreman & Groudine, Pittsburg, for appellant.

R. Rex Downie, Jr., Beaver Falls, for Theodore R.M.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from an order of the Superior Court, 329 Pa.Super. 304, 478 A.2d 480, which reversed a decree of the Orphans' Court Division of the Court of Common Pleas of Beaver County terminating the parental rights of the Appellee-father, Theodore R.M., with respect to his ten year old daughter Faith M. and his nine year old daughter Victoria M. The basis for the lower court's termination of Appellee's parental rights was a finding that the behavior of the Appellee satisfied the statutory grounds as set forth in the Pennsylvania Adoption Act, Act of October 15, 1980, P.L. 934 No. 163 § 1 et seq., 23 Pa. C.S. § 2511(a)(1) which allows parental rights to be terminated on the ground that "the parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." The sole question before us is

whether the Orphans' Court abused its discretion in determining that the statutory grounds for termination of Appellee's rights were established by clear and convincing evidence.

We have recently held that the scope of appellate review where the Orphans' Court has involuntarily terminated a natural parent's right to a child is limited to the determination of whether the decree of termination is supported by competent evidence. *In the Matter of the Adoption of G.T.M.,* 506 Pa. 44, 483 A.2d 1355 (1984).

> If the decree is adequately supported by competent evidence, and the chancellor's findings are not predicated upon capricious disbelief of competent and credible evidence, the adjudication of the Orphans' Court terminating parental rights will not be disturbed on appeal. *See In Re: Adoption of M.M.,* 492 Pa. 457, 460, 424 A.2d 1280, 1282 (1981). It is established that, in a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by 'clear and convincing' evidence that the existence of grounds for doing so. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In Re: T.R.,* 502 Pa. 165, 166, 465 A.2d 642, 642–643 (1983).

*Id.,* 506 Pa. at 46, 483 A.2d at 1356.

Applying this standard to the record before us, we conclude that the decree terminating Appellee's parental rights was proper. The Superior Court correctly set forth the proper standard of review in reversing the Orphans' Court; however, the court failed to properly apply the standard. Instead, the Superior Court made an independent determination of the facts as it perceived them from the record. This was error.

In determining that the statutory grounds for termination had been met, the Orphans' Court made the following findings of fact which we find are competently supported by a fair reading of the record:

The natural mother (Appellant) and father (Appellee) were married in Aliquippa, Pennsylvania, on July 6, 1974.

They then took up residence on a dairy farm at Balsam Lake, Wisconsin. A child, Faith, was born on January 18, 1975. Following marital difficulties, the couple separated on December 12, 1975. Appellant took Faith with her to Aliquippa to live. At the time of the separation, Appellant was three months pregnant with the second child, Victoria, who was born on June 19, 1976. Appellant and the two children resided at the home of her parents in Aliquippa until January, 1981, at which time Appellant remarried. She, her present husband, and the two children now reside next door to her parents. The Appellant's present husband, John R. C., intends to adopt the two children.

The Appellant was employed first as a school teacher and is now a supervisor in a steel mill. Her present earnings are approximately $25,000 per year. She has been the sole support of the children, the natural father having provided no support or maintenance for the children since December, 1975. The Appellee and the Appellant were divorced by a decree of the Court of Polk County, Wisconsin, dated November 4, 1976, effective October 26, 1976. The Appellee remarried on April 30, 1977, and he and his present wife have continued to reside on the Wisconsin dairy farm. The Appellee's second wife was previously married and had a child by that marriage. That child has now been adopted by the Appellee following involuntary termination proceedings in Wisconsin against that child's natural father. Appellee and his present wife also have two children of their present marriage. Unlike the Appellee's first two children, Faith and Victoria, these three children from Appellee's second marriage have been well supported and maintained by him. The Appellee has made no effort whatsoever to voluntarily provide support for the first two children.

The Appellant sought help from the Appellee by filing a complaint for support against him in September of 1976. Having determined that Appellee could not be served within this Commonwealth, on October 26, 1976 the Orphans' Court directed that the complaint be sent to the proper court in the State of Wisconsin for filing and proceedings

under the revised Uniform Reciprocal Enforcement of Support Act, 42 Pa.C.S. § 6741 et seq. On March 15, 1977, the Appellee filed a petition with the Orphans' Court for a writ of habeas corpus for the two children, reciting inter alia, the decree of divorce of the Wisconsin Court, which included an order that the custody of the two children should be in the Appellee. A hearing was held on April 20, 1977 at which time Appellant also served a complaint of support against Appellee. Following a pre-hearing conference, the lower court concluded that the Wisconsin Court had no jurisdiction with regard to the custody of the two children and that it would be inappropriate to give the order of that court full faith and credit. Subsequent to that hearing, the parties and their attorneys agreed to an arrangement for the custody and visitation of the children whereby the custody would remain in the natural mother, with liberal visitation for the Appellee in Wisconsin. The agreement also provided that the Appellee would post a $1,500 cash bond to guarantee compliance with the return of the children from Wisconsin to Pennsylvania and further that the Appellee would comply with an agreed upon support order. That support order involved the payment of $130 per month for the two children.

The Orphans' Court, during the termination hearing, heard testimony from the former attorney of Appellee that following the submission of the agreement to the court the Appellee stated to his attorney that he was unhappy with the terms of the agreement and that he would not comply with them. The court, however, concluded that the contents of the order were in fact the result of an agreement. The court further found that the Appellee remained in the Butler area during the day of April 21, 1977, and that the custody orders were signed and delivered on that day to the attorney for Appellee. Neither Appellee nor his attorney requested any further hearing on the matter and did not appeal the orders of April 21, 1977. Appellee completely ignored those orders by failing to provide any support for

his children and further by failing to visit or attempt to visit his two children.

The court further found that while Appellee averred at the termination hearing that he was unable to pay any support for the two children, the record facts indicate that the opposite is true. His testimony indicated he is the owner of a 360-acre farm worth $150,000 with a house, dairy barn, loading barn, shop and three silos. His 182 cattle are valued at $40,000 and his equipment at $65,000, bringing the total value of assets in his dairy business to $255,000. Against this, Appellee averred that he had debts of $235,000. His gross income in 1977 was $65,000; in 1978 it was $70,000; and his estimated gross income for 1982 was $60,000. He averred that his expenses would exceed his income in 1982. Approximately ten years prior to the date of the termination proceedings, he had purchased his farm from his grandmother for $30,000 and the equipment for $22,000. He paid for each of these in cash. During those ten years, he has improved his dairy farm buildings, constructed a new shop building, installed three silos, and substantially renewed and expanded his farm equipment. Also, the court found he had properly maintained and supported his second wife and the three children of that marriage. From this the court specifically concluded that with the assets and cash flow of his business, he had the ability to pay the $130 per month toward the support of his first two children. The court went on to note that at his request, Appellee's present wife has sent each of the two children small gifts on their birthdays and at Christmas, but that none of these gifts were of any value for support or maintenance. It was Appellee's testimony that he did not try to visit the two children subsequent to the visitation of April 21, 1977, because he was afraid of being found in contempt of the Orphans' Court's order with respect to support. He made one telephone call to Faith, the older daughter, on January 18, 1979, her fourth birthday, and he was allowed to visit with her by telephone. He made no other calls and has sent no correspondence to either child.

The court specifically found that while Appellee testified that he was unable to raise and deposit the $1,500 cash compliance bond provided for in the visitation order of the court, he made no attempt to request the court modify the order due to his alleged financial circumstances. The court further found that Appellee had been able to afford legal services to terminate the rights of the natural father of the child of his second wife and to adopt that child. From this the court concluded that Appellee was well aware that a natural father who does not fulfill his parental duties may have his parental rights terminated.

Based upon the findings of fact, the lower court concluded that for more than five years the Appellee has failed to contribute any sum to the support of his two children and has made virtually no effort to establish any kind of personal contact or fatherly relationship with his two children. Our review of the record and the findings made by the lower court affirms that this conclusion is supported by clear and convincing evidence.

Appellee's assertion that the lower court improperly focused merely upon his failure to support the children to the exclusion of other circumstances (Brief at pp. 21–29) is misplaced. While the court placed great emphasis on this factor, it did not ignore the totality of the circumstances. The court correctly noted that this Court, in *Matter of Adoption of David C.*, 479 Pa. 1, 387 A.2d 804 (1978), held that "while a failure to provide support is not conclusive, it is a factor to be considered in determining whether the parent has forfeited parental rights." *Id.*, 479 Pa. at 11, 387 A.2d at 809. In considering this factor, the Orphans' Court noted that the clear and convincing evidence that the Appellee's farming operation produced a steady cash flow coupled with the fact that Appellee had paid no support up to the present day, evidenced a definite ignoring of his parental duties especially in light of his large capital expenditures in the expansion and renewal of his farming property.

We further stated in *David C.* that:

A period of asserted hardship does not completely relieve a person of parental responsibilities (citations omitted). *The pertinent inquiry is whether the parent has utilized those resources at his or her command in establishing a close relationship with the child.* "Where the parent does not exercise reasonable firmness 'in declining to yield to obstacles' his other rights may be forfeited. *See In Re: Adoption of J.R.F.,* 27 Somerset L.J. at 304." (citation omitted) (emphasis added)

In *In Re: Adoption of J.R.F.,* 27 Somerset L.J. 298, 304 (Pa.C.P.1972) the court correctly stated:

> "Since communication and association are essential to the performance of parental duty, the absent parent and his child are at a disadvantage; and if such a parent is to perform his parental duties, even to a more limited extent than when he lived with the family, he must make special effort to bridge the gulf of geographical separation and to take affirmative steps to maintain communication and association with his child...."

Likewise, the court properly noted in *Termination of Parental Rights of J.R.M.,* 96 Dauphin 368, 371 (1974):

> "However, the parent must remain cautious not to place himself voluntarily in a position that denies to him the full opportunities of being a parent he otherwise would have. If he does place himself in such a position, he has no cause to complain when his performance of parental duties is judged by a more demanding standard."

*Id.,* 479 Pa. at 10, 387 A.2d at 808. Additionally, we have stated:

> Parental rights may not be preserved by complete indifference to the daily needs of a child or by merely waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with her immediate and continuing physical and emotional needs). The parental obligation is a positive duty and

requires affirmative performance which may not be delayed beyond the statutory period by the parent if the parental right is not to be forfeited.

*Smith Adoption Case,* 412 Pa. 501, 505, 194 A.2d 919, 922 (1963).

Following these cases, the lower court was correct in rejecting the Appellee's claims of hardship, geographical distance, the changing of Appellant's phone number, and her move to the house next door. We are not unmindful of the Appellee's hardship as well as the plight facing many farmers which has recently been much publicized by the media. However, there were certainly other, non-financial resources available to Appellee if he so chose to use them. For instance, the Appellee could certainly have petitioned the court (pro se if necessary) for a reduction in the amount of support payments and also the bond which he was to put up to secure visitation of his children. Additionally, while complaining of the great distance between himself and his children and his lack of funds to bridge that distance, he never attempted to communicate with his children on a regular basis through the relatively inexpensive means of personalized letters and photographs. Indeed, his only arguable contact with his children was indirect in that on several occasions he forwarded small gifts purchased by his second wife and later small amounts of money to Appellant for the purpose of purchasing Christmas or birthday gifts; failing even then to take the time to attempt to personalize the relationship by chosing the gifts himself.

Further insight into Appellee's voluntarily placing himself in a position that denies him the full opportunity of being a parent he otherwise would have, *David C.,* 387 A.2d at 868, can be gleaned from his testimony in response to Appellant counsel's query as to why he didn't take a loan to post the visitation bond:

Q: ... why could you not borrow $1500 as required by the Court Order to place in the Clerk's office in our Court when you now have the kind of credit you do?

A: [Appellee]: ... That is what I asked my finance company, and my credit is—I have no credit.

Q: Well, you must have some credit, Mr. [M.], if you owe to the FHA one hundred and ninety thousand at the present time, to PC, twenty-four thousand five hundred, and to some agricultural agency with initials, $16,000, and your total indebtedness now is $235,000.

A: Mrs. Reed, *if I could borrow the money, I would probably borrow some more money so we could operate at a better level.* I cannot borrow more money.

N.T. at p. 105 (Emphasis Added). It is evident from the above that Appellee places the needs of his farm before the needs of his children and that even if he could secure additional funds, he would utilize them for the benefit of his farm and himself rather than to benefit his already neglected children.

This Court cannot see how any sustained effort can be said to have been maintained by Appellee to provide the parental contact and love which is the mainstay of the parental relationship. Therefore, we must agree with the conclusion of the Orphans' Court that irrespective of Appellee's condition in life, he failed in the pertinent inquiry of whether he had utilized *those resources at his command* or had taken any extraordinary step to establish a close relationship with his children. Having reviewed the record, as well as the findings of fact and conclusions of law made by the court below, and in light of the standards ennunciated in *G.T.M., supra,* and *Santosky, supra,* we hold, contrary to the Superior Court, that the court below did not abuse its discretion in ordering termination of the Appellee's parental rights.

The order of the Superior Court is reversed and the order of the Court of Common Pleas of Beaver County, Orphans' Court Division is reinstated.

Mr. Justice FLAHERTY did not participate in the consideration or decision of this case.