532 A.2d 802

In the Matter of the ADOPTION OF C.A.E.

**Appeal of YORK COUNTY CHILDREN AND YOUTH SERVICES.**

Supreme Court of Pennsylvania.

Argued April 10, 1987.

Decided Oct. 15, 1987.

Joseph R. Adamczyk, Dorothy Livaditis, Wanda Neuhaus, York, for C.A.E.

George Hay Kain, York, for York Co. Children & Youth Services.

Gary Dennis Martz, York, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from an order of the Superior Court which reversed a decree of the Orphans' Court Division of the Court of Common Pleas of York County. Appellee's parental rights to her son, C.A.E.[1], were terminated follow-

---

1. The lower court pleadings contain the child's full name rather than his initials throughout these proceedings. We do not in any way condone the use of the child's name and accordingly have changed the name to initials in the caption and throughout the opinion.

ing the Orphans' Court's determination that Appellant York County Children and Youth Services (hereinafter YCCS) had shown by clear and convincing evidence that the factors listed in 23 Pa.C.S. § 2511 were present in this case and that Appellee was incapable of caring for her son. On appeal, the Superior Court reversed, holding that YCCS had not established Appellee's incapacity by clear and convincing evidence. We hold that Superior Court exceeded its scope of review and, accordingly, reverse.

Appellee's child was one of triplets born four months premature on September 17, 1982. Two of the triplets died shortly after birth. He suffered and continues to suffer from numerous medical problems. He remained in the hospital for almost fourteen months after birth and requires, and will continue to require, constant medical care. During the fourteen months C.A.E. was in the hospital, Appellee visited him infrequently and made no effort to learn to care for him.

In July 1983, YCCS filed a petition for custody with the Juvenile Division of the Court of Common Pleas of York County. The child was adjudged to be dependent, and his custody was awarded to YCCS for foster care. He remained in the hospital until December 1983, when he was released into the custody of foster parents.

In November 1984, Appellee revoked her previous consent to give C.A.E. up to foster parents. A number of hearings were held, at one of which the father's parental rights were terminated without opposition.[2] Following the hearings, the Orphans' Court terminated Appellee's parental rights. Superior Court reversed.

We recently reaffirmed that the scope of appellate review where the Orphans' Court has involuntarily terminated a natural parent's right to a child is limited to the determination of whether the decree of termination is supported by competent evidence. *See In re Adoption of*

2. Appellee named two different men as C.A.E.'s father on different occasions. It is not clear from the record who is the actual father, but neither opposed the termination of parental rights.

*Faith M.,* 509 Pa. 238, 240, 501 A.2d 1105, 1106 (1985), and cases cited therein. The burden is on the party seeking termination to show by "clear and convincing" evidence that grounds to terminate exist. *Id.,* 509 Pa. at 240, 501 A.2d at 1106; *In the Matter of the Adoption of G.T.M.,* 506 Pa. 44, 46, 483 A.2d 1355, 1356 (1984).

The Superior Court recognized the proper standard of review. We find, however, that Superior Court misapplied the standard—erroneously substituting its own independent interpretation of the facts as it perceived them to be from the record.

The statutory grounds upon which the Orphans' Court based its termination decree are found in 23 Pa.C.S. § 2511(a)(2), (5). These sections provide:

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

In finding that Appellant had met its burden of showing by clear and convincing evidence that the statutory grounds above were met, the Orphans' Court made numer-

ous findings of fact. These facts, which are supported by the record, show the following:

C.A.E. is a very small child, suffering from retarded physical development and many respiratory problems. He requires compulsive medical care, which a layperson may be trained to give with long-term, rigorous training. (N.T. 1/31/84, p. 51). His condition is such that any lower respiratory tract disease could be lethal. (N.T. 1/31/84, p. 50). Also, the child's condition will continue to be critical for at least several years of his life. (N.T. 1/31/84, p. 50).

The doctor who treated C.A.E. when he was born testified concerning the child's condition and about Appellee's capacity to care for the child. He opined that Appellee is incapable of caring for C.A.E., mainly because she was uncommitted to the fact that medical care would save the baby's life. (N.T. 1/31/84, p. 53). Appellee's psychotherapist also testified that he did not think Appellee was capable of giving the kind of care necessary for C.A.E.'s survival. (N.T. 1/31/84, p. 70). He thought that Appellee's current pregnancy and the fact that she was soon going to regain custody of another child would put considerable stress on her and be too much for her to handle with C.A.E.

Evidence showing that Appellee's visits to the hospital were infrequent, erratic and of short duration was presented. A hospital social worker testified that Appellee became frustrated when trying to feed the baby, had very little interaction with the baby and arrived at the hospital to visit unannounced numerous times. (N.T. 1/31/84, pp. 11, 28–9). A physician testified that Appellee had placed a pyramid shaped object with an eye in the center on the baby's crib, instructed the hospital to use eucalyptus leaves in treating the baby, and brought faith healers to the hospital to cure the child. (N.T. 1/31/84, pp. 46, 48).

Appellee testified on her own behalf. She stated that her long absences from visiting the child were caused by her unstable emotional state, use of excessive medicine and trouble in her personal life. (N.T. 2/23/84, pp. 43, 45, 47–50). She testified that she is on her way to solving her

problems and accepting her child. (N.T. 2/23/84, pp. 50–54).

The trial court's termination of Appellee's parental rights was predicated upon the fact that C.A.E. is in a precarious physical state and needs constant care and attention. The trial court found that Appellee is incapable of caring for the child and has deprived him of care necessary for his well-being. Since these conclusions were supported by the record, they should not have been disturbed.

■ Superior Court injected another factor into its decision by overturning a credibility determination of the lower court. Superior Court found that Appellee had the potential to develop skills to care for the child and that this was sufficient to prevent termination of parental rights. *In the Matter of Adoption of Ellingsen*, 348 Pa.Super. 169, 175, 501 A.2d 1123, 1127 (1985). It is clear, however, that the trial court found that history indicates that Appellee does not have the capacity to ever care for C.A.E. Appellee showed little interest in C.A.E. from the day he was born. Once a child has been placed in foster care, a parent has an "affirmative duty to work towards the return of the child." *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 890 (1986) (quoting *In re: William L.*, 477 Pa. 322, 333, 383 A.2d 1228, 1233 (1978)). Appellee has done nothing to work toward that goal, other than to petition the court for custody, and make sporadic visits to the child. The only evidence presented that indicated that Appellee would be capable of caring for C.A.E. was Appellee's own testimony, which the trial court obviously regarded as incredible. To make a conclusion that Appellee would be capable of caring for the child, then, Superior Court erroneously disregarded the trial court's finding that Appellee's testimony was not credible.

We cannot say, from this record, that Appellee has made efforts to maintain any kind of parental interest in her son. The lower court did not abuse its discretion in terminating Appellee's parental rights, and we believe that this decision was made after careful consideration of the needs of the child.

The order of the Superior Court is reversed, and the order of the Court of Common Pleas of York County, Orphans' Court Division, is reinstated.

McDERMOTT, J., concurred in the result.

NIX, C.J., filed a dissenting opinion in which FLAHERTY, J., joined.

FLAHERTY, J., filed a dissenting opinion in which NIX, C.J., joined.

NIX, Chief Justice, dissenting.

In a custody action where the needs of a child are not properly attended to by the natural parents, the court should be prompt in securing a proper environment for his or her growth and development. In an action for the termination of the rights of a natural parent or parents, the court must exercise the circumspection that the gravity of that action deserves. Once a proper environment is secured for the infant, the urgency of the situation is removed and the immediate well being of the child is secure. Where the incapacity of the parent is asserted as the basis for the severance of a parental relationship, termination of parental rights should not be sustained until it is absolutely certain that no meaningful relationship can be maintained with the natural parent or parents. Experience has shown that the natural bond is stronger than any economic advantages an adoption can provide.

I therefore join Mr. Justice FLAHERTY in his dissent and would affirm the order of the Superior Court.

FLAHERTY, J., joins in this dissenting opinion.

FLAHERTY, Justice, dissenting.

I dissent. The principle in this case involves the extent to which the "social superstructure" may permissibly interfere in the natural combination of parents and their children. The decisions are weighty ones, their consequences hear-trending. Because I agree with the Superior Court that the

Orphans' Court has terminated this mother's parental rights prematurely, I would affirm the reversal of the Orphans' Court.

The child is described by the Orphans' Court as a respiratory cripple who requires intensive care. The condition is, however, of temporary duration. His custodian requires intensive and extensive specialized training, but apparently this training is within the grasp of an ordinary person.

Initially, at least, the mother failed to learn the necessary medical techniques. Her inability to spend sufficient time at the hospital with her child to learn all that was necessary for his care was due to her work at some distance from the hospital in addition to emotional stress due to the premature birth of this child and his two siblings, the death of those siblings, the presence of two other small children, another pregnancy and other influences. The mother has, however, made improvements in her condition through psychotherapy. In addition, she has received training in Child and Infant Life Support Systems (infant CPR), cared for her other children, and maintained a new residence. She has also professed an intention to learn to give this child the medical attention he requires. All these facts were accepted by the Orphans' Court.

The critical basis for the Orphans' Court's decision to terminate this mother's parental rights is that her "professed good intentions for the future to the contrary notwithstanding, the history indicates that such neglect and incapacity will not be remedied." In other words, because the mother failed in the first instance to get the training she needed to properly administer the medical attention required by the child, the court concluded that she will again fail to get this training. In view of the mother's accomplishments in improving her living conditions, the wisdom of the Orphans' Court's ruling is questionable.

The applicable statutory language provides that a parent's rights in regard to a child may be terminated where "repeated and continued incapacity, ... neglect or refusal of the parent has caused the child to be without essential

parental care ... and the conditions and causes of the incapacity ... neglect or refusal *cannot or will not* be remedied by the parent." 23 Pa.C.S.A. § 2511(a)(2) (Supp. 1987). Superior Court interpreted this language as prospective and reversed the lower court on the ground that the mother should yet be afforded a reasonable opportunity to demonstrate her professed interest in attending to her child's medical needs. Absent such an opportunity, in light of the remarkable improvements already implemented by the mother, Superior Court reasoned that there is insufficient evidence to conclude that she will again fail to learn the techniques required by her child's medical condition. In my view, Superior Court's interpretation of the statutory language as prospective is correct; and the error in the Orphans' Court's disregard of the mother's accomplishments in favor of an assumption that, simply because she failed in the first instance to learn whatever is required to attend to her child's medical needs, she will again fail is, to me, inescapable.

We are not here dealing with a question of *custody.* The record is clear that, at the time of the Orphans' Court proceedings, due to the mother's inability to provide the medical attention required by the child, custody was properly in the foster parents, both of whom are registered nurses. The question here is whether, without affording the mother an opportunity to learn to provide the medical attention this child requires, her parental rights should be terminated over her opposition. Like Superior Court, before this mother's rights were terminated, I would offer her a reasonable opportunity to demonstrate her professed interest in attending to her child's medical needs.

For the foregoing reasons, I would affirm Superior Court's reversal of the decree of the Orphans' Court terminating appellee's parental rights.

NIX, C.J., joins.