**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: W.S., FATHER | : | |
| | : | No. 1516 WDA 2024 |

Appeal from the Decree Entered October 31, 2024
In the Court of Common Pleas of Armstrong County
Orphans' Court at No(s):  No. 24 of 2024

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: June 25, 2025**

W.S. ("Father") appeals from the decree involuntarily terminating his parental rights to his son, A.A.S. ("Child") (born in September 2023).[1] Father's appointed counsel, Andrew J. Cypher, Esquire ("Counsel"), has filed a petition to withdraw and an accompanying brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We deny Counsel's petition to withdraw and order new briefing.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court terminated the parental rights of A.M.S. ("Mother") pursuant to a petition for voluntary relinquishment of her parental rights.  Mother did not file an appeal or participate in the instant appeal.

The Orphan's Court set forth the relevant facts and procedural history as follows.

3. On September 13, 2023, the court granted [Armstrong County Children, Youth and Family Services ("CYF" or "the Agency")] application for protective custody based upon substantial concerns regarding Mother's ability to parent and care for Child [following birth], such as Mother's indication that she was unaware that she was pregnant and therefore did not receive prenatal care, as well as Mother not feeding or changing Child unless prompted. Child was placed in foster care . . .. The court entered a shelter care order on September 15, 2023[. Thereafter, the court] adjudicated Child to be dependent on October 20, 2023 [and established an initial permanency goal of reunification. Child's father was unknown at the time.] . . . Child remained in foster care, where he continues to reside.

4. Child has very specific medical needs. . . . Child is diagnosed with tracheomalacia. . . . Child's trachea, instead of being a rigid pipe, is floppy. This allows liquids to drain into his lungs and creates a risk of Child silently choking. As a result, any liquid or formula that Child ingests must first be thickened. [T]his is a chronic condition that could lead to death without the proper preparation of Child's bottles and without proper supervision.

* * * *

6. [After being identified as Child's father,] Father's paternity was established on December 5, 2023. [Father had not exercised care, custody, and control of Child.]

7. Father was included in the permanency plan and services were provided to him through Sunrise, an assistance organization that offers parent education and visitation.

Orphans' Court Memorandum, 11/1/24, at 2-4 (some capitalization omitted; terminology altered for consistency).[2]

---

[2] For example, the Orphans' Court referred to Child as "the Child."

Throughout the ensuing dependency proceedings, the court held regular permanency review hearings and found Father's compliance and progress to be minimal. **See** Petitioner's Exhibit 1. Significantly, despite engaging in Sunrise's training for the care of Child's special medial needs, Father was unable to master the particulars of Child's feeding or gain a meaningful understanding of Child's medical condition. **See** N.T., 10/18/24, at 23-27.

The Agency referred Father to Dr. Carolyn Menta ("Dr. Menta"), a licensed psychologist, for a parental capacity evaluation. The Orphans' Court summarized Dr. Menta's findings as follows:

8. Dr. Menta conducted the evaluation on April 11, 2024[,] where she found significant concerns about Father's ability to parent. According to her report dated April 27, 2024, Father "shows limited awareness of [Child's] special needs" and "is lacking in skills for taking care of his son." She further reports that Father "would require ongoing assistance, support, and monitoring to parent appropriately" and notes that Father "is unable to prepare a bottle for [Child] and struggles to do basic parenting tasks."

9. During Dr. Menta's evaluation, Father completed the Wechsler Adult Intelligence Scale - IV (WAIS-IV), the Minnesota Multiphasic Personality Inventory - 3 (MMPI-3), and the Child Abuse Potential Inventory - VI (CAPI). While noting difficulties in interpretation of his scores due to inconsistent or unscorable responses, Dr. Menta found that Father's "nonverbal reasoning abilities are much better developed than his verbal reasoning abilities" and that Father "has a moderate intellectual disability."

* * * *

11. Dr. Menta recommends in her report that Father "participate in parent training classes," emphasizing that "[h]e will likely benefit from having information presented in a variety of modalities, and especially from hands-on instruction."

Orphans' Court Memorandum, 11/1/24, at 4-5 (some capitalization and brackets in original omitted; some terminology altered for consistency).

In September 2024, the Agency filed a petition to involuntarily terminate Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(5), only, and (b). The Orphans' Court held an evidentiary hearing on the Agency's petition in October 2024.[3] Father, who was present and represented by Counsel, did not testify or offer any evidence.

_____

[3] We have reviewed the record *sua sponte* to determine if the Orphans' Court appointed counsel to represent Child's legal interest. ***See In re Adoption of K.M.G.***, 240 A.3d 1218, 1235 (Pa. 2020); ***see also*** 23 Pa.C.S.A. § 2313(a). The record contains an order by the Orphans' Court appointing Child's guardian *ad litem* ("GAL") from underlying dependency matter, to represent Child's legal interest in the termination of parental rights proceedings. ***See*** Order, 9/10/24. However, the Orphans' Court's appointment order did not memorialize the Orphans' Court's own determination about whether the GAL could represent Child without conflict and improperly delegated to the GAL responsibility for assessing whether Child's best interests and legal interests conflict. ***See*** Order, 9/10/24 (stating that the GAL "shall immediately advise the [c]ourt, prior to the scheduled hearing . . . if there is a conflict between [C]hild's best interest[s] and . . . legal interests"); ***see also Matter of Adoption of A.C.M.***, 333 A.3d 704, 708-09 (Pa. Super. 2025). Moreover, the Orphans' Court did not make its own determination concerning the absence of a conflict between Child's best and legal interests before the hearing. ***See*** N.T., 10/18/24, at 10-11.

Here, however, Child was only twelve months old at the time the Agency filed the petition to terminate Father's parental rights and thirteen months old at the time of the hearing. There was no indication Child was capable of expressing a preference regarding the outcome of the proceeding. Therefore, we find no structural error or arguably meritorious issue with respect to Child's right to counsel under section 2313(a). ***See In re T.S.***, 192 A.3d 1080, 1092-93 (Pa. 2018) ("[I]f the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as

*(Footnote Continued Next Page)*

- 4 -

By decree dated October 31, 2024, and recorded on November 1, 2024, the Orphans' Court involuntarily terminated Father's parental rights to Child. The court filed a contemporaneous memorandum, including findings of fact and conclusions of law. Father appealed and filed a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[4] The Orphans' Court issued a Rule 1925(a) opinion wherein it referred to the reasoning set forth in its findings and memorandum

_____

such, the mandate of Section 2313(a) . . . is satisfied where the court has appointed an attorney-GAL who represents the child's best interests during such proceedings."). Nevertheless, we remind the Orphans' Court of its critical duty to make a conflict determination prior to the appointment of a dual attorney-GAL in a termination matter. *See K.M.G.*, 240 A.3d at 1235-36; *A.C.M.*, 333 A.3d at 708-09.

[4] The underlying termination decree was recorded on the docket on November 1, 2024. We note that Father filed his notice of appeal on December 3, 2024, outside of the thirty-day period contemplated by Pa.R.A.P. 903(a). However, the clerk of the orphans' court failed to indicate in the docket whether notice had been provided. *See* Pa.O.C.R. 4.6(b) ("The clerk shall note in the docket the date when notice was given to the party or to his or her counsel under subparagraph (a) of this Rule."). Therefore, although facially untimely, we will not quash Father's appeal. *See Carr v. Michuck*, 234 A.3d 797, 806 (Pa. Super. 2020) (finding a breakdown of court operations and that the thirty-day appeal period had not started to run when a clerk failed to make the required notation in the docket); *accord In re Adoption of K.A.F.*, 273 A.3d 1036 (Pa. Super. 2022) (unpublished memorandum, at *4) (treating an appeal as "timely filed, *i.e.*, as if the clerk inscribed the notation required by Rule 4.6." when a clerk failed to make the required notation in the docket) (capable of citation for persuasive value under Pa.R.A.P. 126(b)).

accompanying the subject decree. As noted above, Counsel filed in this Court a petition to withdraw, as well as an **Anders** brief.[5]

When counsel seeks to withdraw pursuant to **Anders** and its progeny, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **See In re Adoption of M.C.F.**, 230 A.3d 1217, 1219 (Pa. Super. 2020).

> To withdraw, counsel must:
>
> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Millisock**, 873 A.2d at 752.

Additionally, our Supreme Court has set forth the following requirements for **Anders** briefs:

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.

---

[5] This Court has extended the **Anders** procedure to appeals from termination decrees. **See In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992).

> Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Here, Counsel's petition to withdraw states his belief that there are "no appealable issues" in this matter. Petition to Withdraw as Counsel, 1/22/24, at ¶ 2. Although the petition to withdraw did not aver a conscientious examination of the record, Counsel described the extent of his review of the record and law in his brief. *See Anders* Brief at 4-5. Additionally, in response to a prior order by this Court, Counsel has sent and filed a proper letter informing Father of his rights to retain private counsel or raise additional arguments that he deems worthy of the court's attention. *See* Counsel's Letter, 2/25/25. Counsel's *Anders* brief summarizes the procedural history and facts of this case with references to the certified record and sets forth Counsel's conclusion that the appeal is frivolous, along with his legal reasoning, including citations to the record and case law. In light of this minimal compliance with the technical requirements to withdraw, we will "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Counsel identifies a challenge to the involuntary termination of Father's parental rights to Child pursuant to section 2511(a)(5). *See Anders* Brief at 5-6, 10.

Our standard of review in this context is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court must then assess the petition pursuant to section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

In the case *sub judice*, the Orphans' Court, in relevant part, granted the Agency's petition to terminate Father's parental rights to Child pursuant to section 2511(a)(5), which provides as follows:

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

This Court has stated that to satisfy the requirements of section 2511(a)(5), the petitioning party must produce clear and convincing evidence to establish: (1) the child has been removed from parental care for at least six months; (2) the conditions that lead to the child's removal or placement continue to exist; (3) the parent(s) cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parent(s) are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. *See In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012).

Counsel concludes that this appeal is frivolous in light of the evidence of Child's special medical needs regarding feedings, Father's lack of the skills and understanding necessary to care for Child's needs, and how Father's inability to handle Child's special medical needs could prove fatal to Child. *See Anders* Brief at 6-8. Counsel cites *Matter of Adoption of C.A.E.*, 532 A.2d 802 (Pa. 1987), as supporting his conclusion that this appeal is frivolous. *See id*. at 8-10. Although Counsel's explanation arguably addresses four of the five elements of a section 2511(a)(5) analysis, Counsel did not expressly set forth the relevant statute or discuss the case law discussing the first element. *See In re B.C.*, 36 A.3d at 607.

As noted above, section 2511(a)(5) requires, in part, that "[t]he child *has been removed from the care of the parent* by the court or under a voluntary agreement with an agency for a period of at least six months . . .." 23 Pa.C.S.A. § 2511(a)(5) (emphasis added). Our independent review of the case law reveals a potential conflict over the proper interpretation and application of the "removed from the care of the parent" language in section 2511(a)(5).

In *In re Adoption of J.J.*, 515 A.2d 883 (Pa. 1986), our Supreme Court stated identical language in former section 2511(a)(5) authorized that termination of parental rights when, *inter alia*, "a child has been placed *under the care of a Children's Services Agency* for a term in excess of six months" and the other elements of the section were met. *J.J.*, 515 A.2d at 889 (emphasis added).[6] In *J.J.*, an agency had taken custody of a child after his mother was involuntary committed to a state hospital shortly after the child's birth. *See id*. at 886-87. In that case, the father "never assumed any parental responsibility" and questioned his paternity of the child. *Id*. at 887. The father only had several visits with the child in the mother's presence, and at her insistence, and he only requested visits for himself after the agency filed a petition to terminate his parental rights. *See id*. The father was

_____

[6] Although our General Assembly amended section 2511(a)(5) after *J.J.*, the version of subsection (a)(5) in effect at the time *J.J.* contained the same "removed from the care of the parent" language at issue in this appeal.

- 11 -

uncooperative and hostile with the child's social worker, showed no motivation to accept services, and repeatedly told the social worker he could not care for the child. *See id*. The agency subsequently petitioned for the termination of the father's parental rights, and the trial court terminated his parental rights under sections 2511(a)(2) and (5). *See id*. at 886. This Court reversed the trial court's decision to terminate the father's parental rights in that case, but our Supreme Court reversed this Court, concluding the trial court did not abuse its discretion when terminating the father's parental rights under section 2511(a)(5). *See id*. at 885, 889-90.[7]

In a subsequent *en banc* decision, this Court offered a different approach to the "removed from the care of the parent" language. *In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*). In *C.S.*, this Court concluded that the termination of parental rights under section 2511(a)(5) was "not appropriate" if "the record reflects that [the child] was never in [the parent's

---

[7] In *C.A.E.*, the decision cited by Counsel in his *Anders* brief, a mother refused to care for a child with special medical needs after the child's birth, and the agency sought termination of her parental rights. *See C.A.E.*, 532 A.2d at 803. The trial court terminated the mother's parental rights, but this Court reversed, suggesting that the mother had the potential to develop the skills to care for the child. *See C.A.E.*, 532 A.2d at 805. Our Supreme Court reversed this Court's decision. *See id*. at 805 (holding that the Superior Court "injected another factor into its decision by overturning a credibility determination of the lower court"). Although *C.A.E.* cited *J.J.* when addressing the mother's incapacity to care for a child and duty to work toward reunification, the *C.A.E.* decision did not discuss section 2511(a)(5)'s "removed from the care of the parent" language. *See id*.

care] and, therefore, could not have been **removed from his care**." **C.S.**, 761 A.2d at 1200 (emphasis added). **C.S.** involved a parent who was incarcerated at the time of the child's birth, out of prison for only one month during the child's life, and had never lived with the child. **Id**. at 1198-200. **C.S.**, however, ultimately affirmed the termination of a parent's rights on different subsections of section 2511(a). **See C.S.**, 761 A.2d at 1201 (concluding the termination of parental rights was appropriate under section 2511(a)(1)).

This Court has not issued a published opinion extending the rationale of **C.S.** to situations involving a parent who was not incarcerated at the time a child's removal from another parent's care. However, at least two non-precedential memorandum decisions, capable of citation under Pa.R.A.P. 126(b), have stated section 2511(a)(5) would not be available as grounds to terminate a parent's rights when the child had not been removed from the un-incarcerated parent's care. **Cf. Interest of S.B.**, --- A.3d ---, 2025 WL 1368437 (Pa. Super. May 12, 2025) (unpublished memorandum, at *8 n.6) (opining that termination pursuant to section 2511(a)(5) would have been inappropriate since the children were removed from the care of their other parent while the un-incarcerated parent against whom termination was sought was simply not living with the family or providing regular care for the children); **Interest of P.N.M.**, 264 A.3d 383, 2021 WL 4261127 (Pa. Super. 2021) (unpublished memorandum, at *3) (same). As in **C.S.**, our

- 13 -

memorandum decisions in **S.B.**, and **P.N.M.** ultimately affirmed the termination of a parent's rights on different subsections of section 2511(a). **See S.B.**, 2025 WL 1368437 (unpublished memorandum at \*4) (concluding the termination of parental rights was appropriate under section 2511(a)(1)); **P.N.M.**, 2021 WL 4261127 (unpublished memorandum at \*2) (concluding the termination of parental rights was appropriate under section 2511(a)(2)).[8]

Instantly, the certified record indicates that Child was removed from **Mother's** care two days after she gave birth to Child. **See** Petitioner's Exhibit 1; N.T., 10/18/24, at 21. As the Agency caseworker testified, Father had never exercised "care, custody, [and] control" of Child. N.T., 10/18/24, at 21. Moreover, at the time of Child's removal from Mother's care, Father had not been identified, and his paternity had not yet been established. **See** Orphans' Court Memorandum, 11/1/24, at 9; N.T., 10/18/24, at 21; **see also**

---

[8] In another memorandum decision, this Court rejected the notion that section 2511(a)(5) could not apply when a child had never been in the care of an un-incarcerated father. **See Interest of E.D.A.**, 311 A.3d 586, 2023 WL 8650259 (Pa. Super. 2023) (unpublished memorandum at \*4 n.6) (citing **J.J.**), *appeal dismissed as improvidently granted*, 333 A.3d 370 (Pa. 2025). **But cf. id**. (unpublished memorandum at \*15) (McCaffrey, J., dissenting) (opining that under the plain meaning of section 2511(a)(5), the termination of the father's parental rights was "mistaken" where the child was never in his care). In that case, the majority noted that "when a child is removed while the parent is incarcerated[,] . . . the parent could not have exercised custody, regardless of whether they were otherwise capable." **Id**. The majority further noted the father was "available to take custody of [the child] and would have, in fact, been in custody of [the child] **but for** his removal by [the agency] at the hospital." **Id**. The majority concluded the child "was clearly removed from their care at the time of his birth" even though the child was not removed from father's and mother's home. **Id**.

Petitioner's Exhibit 1. Although Father was not incarcerated, as was the case of the father in **C.S.**, there were no indications Father was still in a relationship with Mother, was aware that he fathered Child, knew of Child's birth, or had any other opportunity to exercise physical or legal custody of Child before the Agency removed Child from Mother's care. The Agency then filed to terminate Father's parental rights under section 2511(a)(5) and cited no alternate subsections of section 2511(a).

Based on our independent review, we conclude there is an arguable issue whether section 2511(a)(5) provided an appropriate basis for terminating Father's parental rights based on the facts of record. On the one hand, **C.S.** suggests a strict interpretation of the phrase "removed from the care of the parent" in section 2511(a)(5). **See C.S.**, 761 A.2d at 1200 ("Termination under []section 2511(a)(5) was not appropriate here because the record reflects that [the child] was never in Appellant's care and, therefore, could not have been removed from his care."); **see also S.B.**, 2025 WL 1368437 (unpublished memorandum at *8 n.6); **P.N.M.**, 264 A.3d (unpublished memorandum at *3). On the other hand, **J.J.** views the same statutory language more broadly. **See J.J.**, 515 A.2d 883 (stating that section 2511(a)(5) authorizes that termination of parental rights when, *inter alia*, "a child has been placed **under the care of a Children's Services Agency** for a term in excess of six months"). Because the Agency here relied solely on subsection (a)(5) when petitioning for the termination of Father's parental

- 15 -

rights under section 2511(a), these potentially competing interpretations and applications of the first element of section 2511(a)(5) are critical to the proper resolution of this case.[9]

Therefore, we deny Counsel's petition to withdraw and direct Counsel to file an advocate's brief on Father's behalf. *See M.C.F.*, 230 A.3d at 1220.[10] Counsel must file an advocate's brief in this Court within thirty days of the date of this memorandum, after which the Agency shall have thirty days to file a supplemental response brief.

Petition to withdraw denied. New briefing ordered. Jurisdiction retained.

_____

[9] We note that Father arguably waived this issue by failing to challenge the sufficiency of the Agency's evidence concerning the first element of section 2511(a)(5) at the hearing and by filing a vague Rule 1925(b) statement. *See B.C.*, 36 A.3d at 605; *In re C.P.*, 901 A.2d 516, 522 (Pa. Super. 2006); *see also* Orphans' Court Opinion, 12/9/24, at 1-2 (noting Father's Rule 1925(b) statement generally alleged the Orphans' Court abused its discretion in terminating his parental rights under section 2511(a)(5) and (b) but failed to identify how the court abused its discretion or made an error of law). Nothing in this decision precludes the parties from discussing waiver, or whether strict application of the waiver doctrine should not apply in this case. *Cf. Commonwealth v. Cox*, 231 A.3d 1011, 1016 (Pa. Super. 2020) (distinguishing between counsel's procedural errors committed before and after the filing of a notice of appeal, and noting "the mere filing of an *Anders* brief and petition to withdraw will not serve to resuscitate claims that were already waived upon the filing of the notice of appeal").

[10] In directing Father's counsel to prepare an advocate's brief, we do not mean to suggest Father will ultimately prevail. *See M.C.F.*, 230 A.3d at 1220.