J-S54045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ADOPTION OF B.B., a Minor Child | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  J.B., Natural Father | : | No. 391 WDA 2016 |

Appeal from the Order Dated February 19, 2016 in the
Court of Common Pleas of Fayette County
Orphans' Court at No(s):  19 ADOPT 2014

BEFORE:  BENDER, P.J.E., OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 31, 2016**

J.B. ("Father") appeals from the Order granting a Petition filed by Fayette County Children and Youth Services ("CYS" or the "Agency") to involuntarily terminate his parental rights to his son, B.B. ("Child" or "B" – born in February 2012), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1]  We affirm.

The trial court set forth the relevant factual background and procedural history of this case in its Opinion, which we adopt as though fully set forth herein.  **See** Trial Court Opinion (B.B.), 2/10/16, at 1-5.

On February 19, 2016, the trial court entered the Order involuntarily terminating Father's parental rights to Child.  On March 10, 2016, Father

_____

[1] In the same Order, the trial court terminated the parental rights of N.W. ("Mother"), Child's biological mother.  Mother has also filed an appeal from this Order, which is listed before this panel at Docket No. 382 WDA 2016.

J-S54045-16

timely filed a Notice of Appeal along with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father presents the following issue for our review:

Did the trial court abuse its discretion in terminating [] Father's parental rights as … [CYS] failed to present clear and convincing evidence to sustain their burden on the three grounds raised in their [P]etition, 23 Pa.C.S.[A. §] 2511(a)(2), (5), and (8)[,] to warrant the termination of [Father's] parental rights?

Father's Brief at 8 (capitalization omitted).[2]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of

---

[2] While Father's Brief lists a Statement of Questions Involved in the Table of Contents, the Statement of Questions Involved is absent from his brief. Nevertheless, we will overlook this minor defect, as it appears to be a clerical error. Moreover, at the heading of the Argument section of his brief, Father sets forth the sole issue that was raised in his Rule 1925 Concise Statement. Accordingly, Father's issue is properly preserved for our review.

- 2 -

review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some internal citations omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained that

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (citation omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, the trial court terminated Father's parental rights under section 2511(a)(2), (5),

(8), and (b).  We will focus on subsection 2511(a)(8) and (b), which provide

as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

Father contends that CYS did not meet its burden of proof with regard to section 2511(a)(8), as there was no clear and convincing evidence to demonstrate that termination is the appropriate action.  *See* Father's Brief at 6, 13.  According to Father, the conditions that led to the placement of Child have been remedied.  *Id.* at 13.  Moreover, Father alleges that the fact

that he has a younger child currently residing in his home, who has not been removed by CYS, "demonstrate[s] that there was an ability by [Father] to parent safely a child[, *sic*,] even though he periodically had problems with drugs …." *Id.* at 6. Father further asserts that CYS failed to present sufficient evidence to enable the trial court to find that there was no bond between Child and him, as the testimony on this matter was conflicting. *Id.* at 13. Finally, Father challenges CYS's proposed placement arrangement for Child to be adopted by one of Child's foster parents ("foster parents") (as foster parents may or may not be adopting him). *Id.* Father complains that "[t]he record is devoid of any information about this placement and how it can or cannot meet [Child's] needs." *Id.*

With regard to section 2511(a)(8), this Court has stated the following:

[Subsection] (a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the [child's] removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the [child's] removal continue to exist, despite the reasonable good faith efforts of [the Agency] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [Agency] services.

*In re J.F.M.*, 71 A.3d 989, 993 (Pa. Super. 2013) (citation omitted).

In its Opinion, the trial court addressed Father's issue and determined that CYS presented clear and convincing evidence that termination of Father's parental rights under section 2511(a)(8) was warranted. *See* Trial Court Opinion (B.B.), 2/10/16, at 7-9. The trial court's factual findings are

supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, *supra*. Accordingly, we rely on the trial court's rationale in determining that the requirements of subsection 2511(a)(8) have been met by clear and convincing evidence. *See* Trial Court Opinion (B.B.), 2/10/16, at 7-9. Moreover, we adopt the trial court's rejection of Father's contention concerning CYS's proposal of foster parents' adult child as an adoption resource. *Id.* at 10-11.

Next, we review the termination of Father's parental rights under section 2511(b). This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], th[e Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has also has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Moreover, it is appropriate to consider a child's bond with his or her foster parent. *See In re: T.S.M.*, 71 A.3d at 268.

In addition, in *In re: T.S.M.*, our Supreme Court set forth the process for evaluation of the existing bonds between a parent and a child, and the necessity for the court to focus on concerns of an unhealthy attachment and the availability of an adoptive home. The Supreme Court stated the following:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See, e.g., R.J.T.*, [9 A.3d at 1190] (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact.

Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

[The Adoption and Safe Families Act of 1997, P.L. 105-89] ASFA[,] was enacted to combat the problem of foster care drift, where children … are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. *See In re R.J.T.*, 9 A.3d at 1186; *In re Adoption of S.E.G.*, [901 A.2d 1017, 1019 (Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. *See*, 42 Pa.C.S. § 6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

*In re: T.S.M.*, 71 A.3d at 268-69.

In its Opinion, the trial court addressed Father's challenge concerning section 2511(b) and determined that CYS presented clear and convincing evidence that termination of Father's parental rights would best serve Child's needs and welfare. *See* Trial Court Opinion (B.B.), 2/10/16, at 9-11, 13. Again, the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, *supra*. It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726,

732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")). We conclude that Father's argument regarding section 2511(b) lacks merit, and, therefore, affirm the trial court's Order, with regard to subsection (b), based on the trial court's Opinion. *See* Trial Court Opinion (B.B.), 2/10/16, at 9-11, 13.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2016

**IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA**

IN RE: ADOPTION OF B████████ B█████████

ORPHANS' COURT DIVISION

No. 19 ADOPT ~~2015~~ 2014

FILED
02/19/2016 2:36:21 PM
REGISTER OF WILLS
FAYETTE COUNTY
PENNSYLVANIA
Inst Num:     201601734

# OPINION

Anthony S. Dedola, Jr., Esq., for Fayette County Children and Youth Services
Wendy L. O'Brien, Esq., for M████ W███, Natural Mother of B██████ B█████████
Dianne H. Zerega, Esq., for J█████████████, Natural Father of B███████ B█████████
Sarah E. Connelly, Esq., for B███████ B█████████

LESKINEN, J.

Before this Court is the Petition for Involuntary Termination of Parental Rights, hereinafter "Petition," filed by Petitioner, Fayette County Children and Youth Services, hereinafter "FCCYS," on May 14, 2015. Petition was filed on behalf of B████████ B█████████, a minor child, and it seeks to terminate, pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (8), the parental rights of B████████'s biological father, J█████ B█████████, hereinafter "Father," and B████████'s biological mother, M████ W███, hereinafter "Mother." A number of hearings were held on the matter, including June 30, 2014; August 8, 2014; December 5, 2014; December 15, 2014; and January 16, 2015. This Court heard testimony from FCCYS and Mother; Father did not testify at the hearings. Additionally, FCCYS submitted a brief on August 25, 2015, in support of termination; through counsel, Father and Mother submitted briefs, dated October 26, 2015, and October 27, 2015, respectively, in opposition to the termination.

After consideration of the record and current case law, this Court hereby grants the FCCYS Petition for Involuntary Termination of Parental Rights.

1

## BACKGROUND

The subject child is B████ D██ B██████, born on February 17, 2012. Benjamin was adjudicated dependent on March 12, 2012, removed from the custody of Mother and Father, and placed in foster care. B██████ currently resides with his foster parents, J██ and K██ B██████, hereinafter "Foster Parents," with N████ W███, his older sibling.[1] According to FCCYS and witnesses presented at hearings, B██████ has a bond with his foster parents. Foster Parents have expressed their intention to provide permanency to both B██████ and N████ if the FCCYS Petition is granted.[2] B██████ was born 1 month premature, and he was placed into foster care as soon as he was discharged from the hospital; B██████ has never lived in the home with Mother and Father.

FCCYS became involved with the family on September 10, 2011, when they received a Child Protective Services report indicating physical abuse and neglect of N████. Investigation revealed that N████ had numerous bruises and fractures about her body, along with other various injuries.[3] There was also an indication of previous abuse of N████.[4] Through their investigation, FCCYS determined that Mother and Father were the abusers. In addition to the abuse and neglect of N████, Father was

---

[1] N████ W███ is the child of Mother and R████ H███. The proceedings referenced in this opinion pertain to both children; however, the Petition for Involuntary Termination of Parental rights of N████ W███, *In re Adoption of N████ W███*, 20 ADOPT 2015, are addressed in a separate opinion.

[2] Due to the unique circumstances surrounding N████, *e.g.* her need for continuing counseling and mental health services, Foster Parents are not certain they could personally adopt both children. According to testimony of Christine Plum of Family Care, who manages foster homes for FCCYS, one of Foster Parent's biological adult children is willing to provide a home for B██████, if necessary. *See* Trial Tr. 89-90; Aug. 8, 2014.

[3] Injuries to the child included small, circular bruises to the head, chest, legs and back; posterior right rib fractures; poor weight gain; elevated liver enzymes; hair loss; and evidence of the drug Seroquel in her system. *See* Petition for Involuntary Termination of Parental Rights, dated May 14, 2014.

[4] According to FCCYS, medical records indicated that prior concerns of inappropriate bruising of the child occurred in April 2011. *See* Petition for Involuntary Termination of Parental Rights, dated May 14, 2014.

2

emotional issues with the use of marijuana, and has numerous positive tests confirming this. As of the date of the last hearing, there were continuing concerns regarding drug use and drug-seeking behaviors by Mother and Father;[6] additionally, Mother was suspected of seeking out prescription drugs for Father,[7] and Father has been suspected of actively avoiding drug testing by FCCYS.[8]

Furthermore, FCCYS continued to have concerns with certain conditions of the Family Service Plan that were not being met by Mother and Father. There were numerous complaints of missed mental health appointments, missed visitations, and the family's housing situation remained a concern.[9] When Mother and Father were unsatisfied with this characterization by Ms. Wright, they were given the "rare" opportunity by FCCYS to change Caseworkers. However, some of the problems persisted after the change was made. Maria Radel, the family's new FCCYS Caseworker, continued to report issues regarding missed appointments by Mother and Father, which includes mental health counseling and drug and alcohol counseling.

B██████ has been in the care of Foster Parents for nearly 4 years, and has never resided with Mother and Father. According to testimony, B██████ is not fearful of Mother and Father; however, B██████ has no bond with either of his natural parents,

---

[6] On November 21, 2014, six days after being released from a rehabilitation facility, Father received a prescription for 84 tablets of hydrocodone; during his visit, he did not disclose that he had recently been released from rehab, and gave false information (he stated that he worked as a Diesel Mechanic when he, in fact, was employed at McDonald's). See Trial Tr. 23-25; Dec. 5, 2014.

[7] On December 30, 2014, Mother obtained a prescription for Vicodin; she allegedly exhausted the supply herself. However, on January 5, 2015, Mother did not test positive during a drug test administered by FCCYS; Mother denies giving the medication to Father, but admitted to not being forthright with FCCYS about the prescription. See Trial Tr. 106-109; Jan. 16, 2015 (afternoon).

[8] This includes an incident where Father actively avoided drug testing at his home. It was alleged that on December 2, 2014, two Caseworkers from FCCYS (including Ms. Radel) contacted Mother and Father at their home in order to administer a drug test. At one point, Father allegedly asked one of the Caseworkers to step outside momentarily; however, Father got into a vehicle and left the area. See Trial Tr. 157-158; Dec. 5, 2014.

[9] According to Justin Varney of Family Solutions, Mother and Father had 4 different addresses between October 2012 and the hearing on August 8, 2014.

4

nor does he display any signs of separation anxiety when he is not with them. Additionally, Tony Schrim, a Therapist from Family Solutions that was assigned to the family in 2012 with the goal of reunification, admitted that while he thought reunification between Mother, Father and N████ would be possible with intense therapy, reunification with B████████ would be more difficult because of his time in foster care.

FCCYS believes that in the best interests of B████████, he should remain with Foster Parents. At the conclusion of the hearings, Attorney Sarah Connelly, whom the Court appointed to represent the best interests of the child, recommended termination of Mother and Father's parental rights.

## DISCUSSION

Under Pennsylvania law, "In termination cases, the burden is upon [the party seeking termination] to prove by clear and convincing evidence that [his or her] asserted grounds for seeking the termination of parental rights are valid." *In re T.D.*, 949 A.2d 910, 914 (Pa. Super. 2008) (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The Superior Court has further stated:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*Id.*

5

Thus, Petitioner, FCCYS, has the burden to prove, by clear and convincing evidence, that the Court should terminate the parental rights of Respondents. Under the statute, grounds for termination, in relevant part, are as follows:

§ 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition

6

filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa. Stat. and Cons. Stat. Ann. § 2511 (West).

The statute sets forth a two-part analysis for termination, which the Superior Court has explained as such:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re Adoption of C.J.P.*, 114 A.3d 1046, 1049-50 (Pa. Super. 2015).

Because B██████ was placed into foster care nearly 4 years ago, where he has remained his entire life, FCCYS has far exceeded the time requirements under § 2511(a)(5) and § 2511(a)(8). Mother and Father contend that while B██████ has been in placement for nearly 4 years, FCCYS has failed to establish that the conditions which led to placement have not been eliminated;[10] this Court disagrees. As part of Mother and Father's Family Service Plan, first implemented when B██████ was adjudicated dependent, Mother and Father were required to attend mental health counseling, maintain appropriate housing, and to cooperate with FCCYS; additionally, there were concerns with their ability to be appropriate parents, as well as concerns with Mother and Father's founded abuse of N██████, a child that, unlike B██████, had resided with

---

[10] *See* Respondent's Brief in Opposition to Inv. Termination of Parental Rights, Oct. 27, 2015.

7

them at one point. It is admitted by FCCYS that in early 2013, Mother and Father had made progress toward getting B▓▓▓▓▓ returned to them, and unsupervised home visitation had begun; however, reunification was never completed. Furthermore, according to FCCYS, some of the conditions that led to the initial placement still exist. This includes Mother's failure to regularly attend mental health counseling; Mother and Father's failure to cooperate with FCCYS in submitting to random drug testing and attending counseling; and concerns regarding appropriate housing and deplorable conditions of the home. Additionally, there remain concerns whether Father's drug use and Mother and Father's drug-seeking behavior make it impossible for them to provide a safe home for their children.[11]

Even if Mother and Father were able to prove that even *most* of the conditions that led to placement were remedied, it would not bar involuntary termination under § 2511(a)(5) or § 2511(a)(8). The Superior Court has held that "where a parent has addressed some of the conditions that led to a child's removal, but other conditions still exist, [a finding that the conditions that led to placement still exist] may be deemed to be satisfied." *In re D.A.T.*, 91 A.3d 197, 205-206 (Pa. Super. 2014); *see also In re C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008) ("[A]lthough Mother exhibited substantial progress in meeting the Agency's objectives, she ultimately was unable to care for C.L.G. because, twelve months later, she could not provide the requisite parenting and adequate housing."); *see also In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005) (holding mother made significant progress as to certain conditions, but conditions that led to removal continued to exist).

---

[11] One of the reasons for placement, as stated in the Petition, was the presence of the drug Seroquel in N▓▓▓'s system; FCCYS alleges that Mother and Father continue to be irresponsible with drugs and prescribed medications.

8

Additionally, it is clear that FCCYS has a genuine concern for B████ if he were to be placed into the care of Mother and Father. It is important to note that the reasons for initial placement of N███, B████'s sister, included a founded case of child abuse and neglect against Mother and Father; furthermore, Father has a criminal conviction for subsequently abusing K███ W███ another child of Mother. According to testimony, Father has not been cooperative with Fayette County Adult Probation, and has tested positive for illegal drugs on numerous occasions; additionally, Father has not cooperated with FCCYS; in fact, he has done the opposite.

Based on the testimony heard by this Court, it is apparent that B████ has been in foster care for nearly 4 years as a result of a voluntary agreement with FCCYS, and that "conditions which led to the removal or placement" of B████ still exist. Thus, FCCYS has met their burden, by clear and convincing evidence, that 12 months or more have elapsed from the date of B████'s placement into foster care, the conditions which led to his placement continue to exist and termination of parental rights would best serve B████'s needs and welfare.

Because this Court has determined that FCCYS has met their burden under § 2511(a)(5) and § 2511(a)(8), we must now consider whether termination is proper under § 2511(b). § 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). Furthermore, the Superior Court has explained:

> [I]n addition to a bond examination, the trial court can equally emphasize
> the safety needs of the child, and should also consider the intangibles,
> such as the love, comfort, security, and stability the child might have with
> the foster parent. Additionally, this Court stated that the trial court should

9

consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

The Supreme Court of Pennsylvania makes it clear that "the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *In re T.S.M.*, 71 A.3d 251, 268-269 (Pa. 2013). In deciding whether it is appropriate to terminate rights, "attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy," and the damage this will cause "must be weighed against the damage that bond may cause if left intact." *Id.* at 269.

In the present case, the testimony establishes that B█████ has love, comfort, and security with Foster Parents, who have been B█████'s primary guardians for nearly his entire life. It is clear that B█████ is currently residing in a caring and stable home with Foster Parents. Foster Parents have expressed their doubts about adopting both N█████ and B█████ due to N█████'s extraordinary needs. However, as Christine Plum of Family Care and Barbara Wright of FCCYS both testified, Foster Parents have made it clear that one of their biological adult children, who is very familiar with B█████, is willing to adopt him if need be. While Father took issue in his Brief[12] with the plan to place B█████ with the "unnamed son of his foster parents," it is clear that FCCYS and Family Care are satisfied with this potential arrangement. It is clear that N█████ has unique needs, which require a great deal of time, energy and focus by Foster

---

[12] *See* Respondent's Brief in Opposition to Involuntary Termination of Parental Rights; Oct. 26, 2015.

10

Parents. B█████ is said to have a bond with his sister; because B█████'s alternate adoptive parents live close to Foster Parents, he and N████ would have the opportunity to continue their relationship.

Several witnesses testified to the lack of a bond between B█████ and his natural parents. According to Barbara Wright, the family's FCCYS Caseworker, B█████ refers to Mother and Father as "mommy" and "daddy" at visits, but only because he sees N████ doing so; once the visitation is over, B█████ shows no anxiety or adverse effects of being separated from his natural parents. Christy Shaw, the Permanency Program Specialist at FCCYS, testified that B█████ would not suffer from a termination of Mother and Father's parental rights, because his permanent attachment is to Foster Parents. Furthermore, Tony Schrim, Therapist from Family Solutions (and Mother's own witness at hearings) testified that he observed no bond between B█████ and his natural parents, and believes unification would be extremely difficult because B█████ has been in Foster Care his entire life. We are convinced that even if some bond exists between B█████ and his natural parents, severing this bond will not have a detrimental effect on B█████.

In her Brief in Opposition to Termination, Mother contends that the FCCYS Petition should not be granted, because she "has proven herself capable of parenting, by providing a stable home and maintaining appropriate employment to support herself and her youngest child, A████ B█████, who remains in her care and custody."[13] Although A████ is currently in the care of Mother, and even if the dependency action regarding A████ has been closed, the relevant questions surround Mother's fitness and

---

[13] *See* Respondent's Brief in Opposition to Inv. Termination of Parental Rights, Oct. 27, 2015.

11

ability to parent B██████. The Supreme Court of Pennsylvania has long held that we must look at the unique circumstances leading to the placement of the child in question, and not whether a parent is capable of parenting any child in general. *See generally Matter of Adoption of G.T.M.*, 483 A.2d 1355 n.4 (Pa. 1984) (holding that the issue in the case was not whether the appellee was capable of caring for an infant, but rather whether she could properly care for a child she failed to care for in the past, and that child had special problems and was well beyond the "infant stage" at the time of termination proceedings). As stated numerous times, B██████ has never lived with his natural parents, and is almost 4 years old at this point. This Court has heard no testimony relating to Mother and Father's ability to parent A██████, nor would such testimony be relevant to how they would respond to having B██████ in their care.

## CONCLUSION

Accordingly, this Court finds by clear and convincing evidence that B██████ was adjudicated dependent nearly 4 years ago, and as part of a voluntary agreement with FCCYS, he was placed in care of Foster Parents. It is clear that certain conditions that led to B██████'s placement into foster care continue to exist, and that Mother and Father have failed to remedy these conditions. The services and assistance provided to Mother and Father have not, and are not likely to remedy the conditions which led to B██████'s placement in foster care within any reasonable period of time. Furthermore, it is clear that termination of Mother and Father's parental rights, and B██████'s impending adoption by Foster Parents or their unnamed adult son, would best serve the needs and welfare of B██████. Thus, termination of Mother and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) (5) and (8) is proper.

12

This Court recognizes that "the complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, carrying with it great emotional impact for the parent and children." *In re Bowman*, 666 A.2d 274, 280 (Pa. 1995) (*citing In re Adoption of Michael J.C.*, 473 A.2d 1021, 1026 (Pa. Super. 1984), *reversed on other grounds*, 486 A.2d 371 (Pa. 1984)). However, it is clear that the circumstances that led to B██████'s placement continue to exist; after nearly 4 years in placement, B██████ requires permanency in the care of his Foster Parents, who have played a pivotal role in addressing B██████'s developmental, physical, and emotional needs. For all of the above reasons, the Court enters the following Order:

13