**In re Adoption of S.L.T.**

16

C.P. of Chester County, No. AD-2014-0035

*Susan M. Potts*, for S.L.T.
*Rochelle N. Bobman*, for birth parent and adoptive parent.
*Pro se* birth parent.

TUNNELL, *J.*, Sept. 12, 2014—This is a step-parent adoption proceeding. The biological father of S.L.T., Scott Toombs, and his wife, Emily Toombs, the step-mother, seek to terminate the parental rights of S.L.T.'s biological mother, Jessica Puckett. After a hearing by the court sitting without a jury held September 4, 2014, and upon consideration of the testimony of all the witnesses, the court denies the Petition to Terminate Parental Rights (also referred to as "TPR").

## JURISDICTION

A threshold issue in this case concerns jurisdiction.

Although Scott and Emily Toombs (collectively "petitioners") filed their petition for adoption and a petition for the Termination of Parental Rights in May 2014, there is no certificate that service was ever made

on Jessica Puckett. On July 3, 2014, the petitioners filed a revised petition for adoption and revised petition for Termination of Parental Rights. The court appointed Susan Potts, Esquire as counsel for S.L.T. on July 11, 2014. On that date, a preliminary decree issued scheduling the TPR hearing for September 4, 2014. On August 21, 2014, notice and a copy of the revised petition for Termination of Parental Rights was received by Jessica Puckett, two weeks before the hearing.

A prior custody matter pending in the Superior Court of New Jersey, Bergen County, is docketed as *Scott Toombs v. Jessica Puckett*, No. FM-02-1123-12. Jessica Puckett filed a notice of motion in that court, and Scott Toombs then requested a continuance of any proceeding in New Jersey through the date of September 19, 2014, which was granted by the Bergen County Court.

S.L.T. has resided in Pennsylvania for two years.

Pennsylvania and New Jersey are both signatories to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *Compare* 23 Pa. C.S.A. §5401, *et seq.*, *with* N.J.S.A. 2A: 34-53, *et seq.* Adoption cases such as that at bar here are excluded from the UCCJEA, 23 Pa. C.S.A. §5403, because adoption is a specialized area, the jurisdictional provisions for which are found elsewhere.[1]

---

1. The Pennsylvania Adoption Act confers original jurisdiction over involuntary termination and adoption proceedings to the court of common pleas. 23 Pa. C.S.A. §2301. Venue is proper in the county where the parents, the adoptee, or the person who has filed a report of intention to adopt reside. §2302(1). That county is Chester County, Pennsylvania. It has an Orphans' Court Division which exercises adoption jurisdiction. *See* 23 Pa. C.S.A. §2102, cmt. This court has determined that it has jurisdiction over the present adoption proceeding.

*See* UCCJEA, §5403, cmt. *supra.*

This court does not disturb the question of custody and visitation pending in Bergen County. But since the adoption is denied, any further determination of the child's custody would be subject to the UCCJEA. This court will defer to the Bergen County Court for its determination thereon.

As reasons for terminating the rights of Jessica Puckett, the biological mother,

Petitioners cite the following sections of the Pennsylvania Adoption Act of 1980, 23 Pa. C.S.A. §2101, *et seq.*, ("Adoption Act") as amended:

§2511. Grounds for involuntary termination

(a) General rule — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

## APPLICABLE LAW

Substantively, the Pennsylvania Supreme Court has stated that there is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, the Supreme Court has held that the parental obligation is a positive duty which requires affirmative performance. *In Re: Burns*, 474 Pa. 615, 379 A.2d 535 (1977). A parent must exert himself or herself to take and maintain a place of importance in the child's life. *Id.*

Parental rights may not be terminated in the absence of evidence which is clear and convincing. This high standard was formulated by the United States Supreme Court in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This principle requires evidence which is so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction without hesitancy of the truth of the precise facts in issue. *In Re: Adoption of James J.*, 332 Pa. Super. 486, 493, 481 A.2d 892, 896 (1984).

The law recognizes that there are situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and her child. Therefore, it is incumbent upon a court, before it terminates the rights of a non-custodial parent, to consider carefully the non-custodial

parent's explanation for her apparent neglect. Only when the totality of the circumstances demonstrates clearly and convincingly that a parent has refused or failed to perform parental duties for a minimum period of six months may an order be entered terminating parental rights. *In Re: Shives*, 363 Pa. Super. 225, 525 A.2d 801 (1987). The pertinent inquiry is not the degree of success a parent may have had in reaching the child, but whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship. *In Re: Adoption of Faith M.*, 509 Pa. 238, 501 A.2d 1105 (1985).

Even where it is established that a parent has failed to perform parental duties for a period in excess of six months, such a finding does not in and of itself support an order terminating parental rights. Rather, a court then must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of said parent's parental rights. In deciding this sensitive question, the Supreme Court has said that it is mindful of the irreversible nature and serious emotional impact which necessarily follow an involuntary termination of parental rights. *In Re: Adoption of Orwick*, 464 Pa. 549, 347 A.2d 677 (1975). A court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child, 23 Pa.C.S. §2511(b). Judicial inquiry is thus to be centered on the best interests of the child rather than the fault of the parent. *Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986).

In summary, in Pennsylvania when involuntary

termination is sought the court first determines if the statutory requirements in §2511(a)(1) have been satisfied. If they have, the court assesses any explanation or extenuating circumstances made by the parent. Next the court evaluates any post-abandonment contact between the parent and child, and lastly and most importantly the court assesses the effect of termination on the needs and welfare of the child. *In Re: Adoption of Hamilton*, 379 Pa. Super. 274, 549 A.2d 1291 (1988). The court makes the following:

## FINDINGS OF FACT

Scott and Jessica Toombs were married on September 13, 2007. He was 20 and she was 17 when, on March 14, 2008, S.L.T. was born to them in Bergen County, New Jersey. The parents were not only young, but immature and necessitous. Fortunately, S.L.T.'s grandparents were able to provide some financial and emotional support. Scott and Jessica moved to a studio apartment. Both worked various jobs. S.L.T. was placed in daycare at approximately six months of age. Jessica had issues with her mental health, as she freely conceded. The court attributes the slovenly condition of their living quarters, and her resistance to additional financial and medical help to that condition. Tensions with Scott arose; the couple separated. Jessica moved out and Scott stayed in the apartment with S.L.T. He became the primary caregiver. Jessica was to share physical custody on a 50/50 basis, but over time she saw the child less and less. Jessica was unable to maintain stable housing for herself. Jessica also entered into an unsavory relationship which further plagued her. On January 23, 2012, she signed a consent

order in the Superior Court of New Jersey case entitled *Scott Toombs v. Jessica Puckett*, docket no. FM-02-1123-12. This transferred joint custody of S.L.T. from mother to father. Visitation by mother was referenced. Both parents were exempted from paying or receiving alimony or child support. Jessica then left Bergen County, New Jersey and moved to Alabama. During her absence, her mother, Tina Puckett, regularly continued to see and care for S.L.T. until Scott Toombs moved to Chester County, Pennsylvania.

While she was in Alabama, Jessica telephoned S.L.T. on his birthday and made a few other calls as well. In addition to having Scott's phone number, Jessica also had his email address. Nonetheless, Jessica's contacts with S.L.T. were sporadic at best. She was gone for more than six months.

In the fall of 2012, Scott received military orders requiring him to relocate in Pennsylvania. He and his fiance, Emily Sickles, moved from Bergen County, New Jersey to Chester County, Pennsylvania. On October 27, 2012, the parties met in Kennett Square and Jessica signed two consent orders before a notary in which she granted, among other things, parental control of S.L.T. to Emily Sickles. Jessica affirmed that she "understands and agrees this decision is in [S.L.T.'s] best interest and will provide him with a happy, productive, stress-free lifestyle." The document in question (petitioners' exhibit 3) further states that Jessica "agrees Emily Sickles will provide a stable and loving environment for [S.L.T.]." During the hearing, Jessica's testimony was consistent. She recognized that those were things she could not herself provide to S.L.T. at that point in time, and had no problem with S.L.T.'s

relocation to Chester County, Pennsylvania under the circumstances. Although neither of the consent orders signed by Jessica on that date were submitted to the Bergen County court, they have evidentiary value for the purposes of the present hearing. One of the consent orders also changed the visitation schedule so that Jessica was authorized one weekend every two months in Pennsylvania, and visitation was also authorized when S.L.T. was visiting his grandparents in Bergen County, New Jersey.

The date of October 27, 2012 is also significant as it was the last date on which Jessica saw her son S.L.T. Although the accounts of that visit differed, the court gives credence to Jessica's version which was it did not go particularly well. Emily Toombs, the stepmother, hovered over S.L.T. and placed a hand on him as if to restrain him. Jessica promised to contact S.L.T. in seven days, but testified she was thwarted by Scott and Emily from making such contact.

Jessica attempted to see S.L.T. on Christmas night. She was a passenger in a car which drove up to the elder Toombs' house, S.L.T's grandparents. She demanded to see S.L.T. Scott refused to bring the child out, and stated that the circumstances of this unannounced visit were "scary". Jessica testified that she had tried to be civil before and that that did not work, and that announced visits could be thwarted.

When Scott and Emily moved in the fall of 2013 to a different address in West Chester, Pennsylvania, they did not give Jessica their new address. Because the telephone

and email exchanges between him and Jessica had deteriorated to disparaging remarks, Scott changed his telephone number as well and did not give the new one to Jessica. At this point, Jessica no longer knew where her son was.

Meanwhile, S.L.T. was acting out. He had anger issues and was hitting and yelling in school. Scott and Emily arranged for S.L.T. to be counseled by Seth Rosenberg, a licensed professional counselor in West Chester, Pennsylvania, to learn how to cope with his issues. Mr. Rosenberg was a witness in the hearing and described his approach in his dealings with S.L.T. He was able to help S.L.T. verbalize his thinking and the reasons for his anxiety. Mr. Rosenberg testified that the child had progressed very well, and the hitting and anger issues have largely resolved. Mr. Rosenberg was permitted to state, without objection, that because the child had a history of not seeing his mother, reintroducing her to him "could be a Pandora's box" and further inconsistency of visits might affect his emotional stability. Inasmuch as Mr. Rosenberg never met Jessica, and never witnessed her interaction with S.L.T., and, frankly, did no kind of bonding assessment, the court discounts his speculation in this respect as just that.

No one, the court included, would want to unnecessarily upset S.L.T.'s emotional environment, nor wish for a repeat of the kind of distress he has experienced. However laudable the idea of "consistency" is for S.L.T.'s world, his father is in the military and testified that he expects to be transferred every three to five years or so which will, as to S.L.T. and all others who are in a military family, be repetitively uprooting and a jolt to consistency. With

this S.L.T. must learn to cope. The court believes that no less is true of his being reintroduced to his mother. That should be done obviously properly and by those who have expertise. The court is convinced that Jessica brings her own love and maternal enrichment that will prove to be beneficial to S.L.T., provided that none of the parties try to poison his mind against the others, which would be the quickest way to destabilize him.

This action was filed in Chester County in May 2014. Jessica became aware of its pendency only in mid-August. The court pays no attention, as dictated by the Adoption Act at §2511(b) to her activities, if any, following notice to her of these proceedings. However, her activities prior thereto are to be considered.

Scott and Emily Toombs made contact by Jessica with S.L.T. as difficult as they could. They did not try very hard to give her notice of the proceeding in Chester County. They also conceded that they did not notify Jessica of their new address, giving the reasons that she might show up "out of the blue", that she had not seen S.L.T., that she was not trustworthy, and that she was "erratic and irrational."

The court must analyze Jessica's resistance to the obstacles placed before her. Although she still had the address and telephone number of the paternal grandparents, she did not call them because she perceived they were against her. She also had Emily Toombs' work number, but felt restrained from contacting Emily at work. Nonetheless, she and her fiance, Jason, drove the distance from Bergen County, New Jersey to Chester County, Pennsylvania more than once to see if they could locate

where Scott and Emily Toombs were residing. They drove around several condominiums to try to find their cars. Jessica also used search engines on the internet to search for her child.

For Jessica to accomplish even that much, she had to confront her own health issues, and she finally did so. For the last year and a half she has been on medications, and sees a therapist weekly. She also sees a psychologist once a month. In addition, she has formed a positive relationship with one Jason Mubaideen, who has been a good support for her. They are now engaged, and have a brand new baby. Jessica has mended her fractured relationship with her mother, Tina Puckett, with whom she presently resides.

While the court does not endorse all of Jessica's decisions and prior behaviors, considering from where she has started, Jessica has impressed the court with her recovery, and her sincerity in desiring to reestablish and maintain a relationship with S.L.T. Jessica is now 24 years old and is taking care of herself and her baby, although presently still with assistance from her mother. The court is ever mindful that the rights of a parent will not be terminated solely on the basis on environmental factors such as inadequate housing, furnishings, income, clothing or medical care if they are beyond the control of the parent. 23 Pa. C.S.A. §2511(b). At an earlier time, Jessica was essentially helpless to alter her environment, occluded as she was by her medical issues. The court agrees with her testimony, and her mother's testimony, that the past strife is behind them.

Counsel for S.L.T. advocated against terminating the parental rights of his mother. In regard to the alternative basis for termination, under §2511(a)(2), *supra*, she argued that Jessica did recognize that she needed psychological help and agreed that S.L.T.'s needs would be taken care of by his birth father. This provided S.L.T. with "essential parental care" even if it was not her own. The court agrees. Jessica testified that she thought that was the best thing to do for S.L.T. at the time, not realizing that the petitioners would block the visitation called for under the various consent orders Jessica signed. Moreover, Jessica has gone a long way to remedy the circumstances which caused her own incapacity.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this adoption proceeding.

2. This court does not disturb the status of custody and visitation between the parties.

3. The elements for termination under §2511(a)(1) and §2511(a)(2) were not proven by clear and convincing evidence.

4. Denial of termination meets the needs and welfare of S.L.T.

An appropriate order follows.

## FINAL DECREE

And now, this 12th day of September, 2014, following an evidentiary hearing upon due notice, for the reasons set forth in the court's decision of this date, it is ordered

and decreed that the petition of Scott Toombs and Emily Toombs for the involuntary Termination of the Parental Rights of Jessica Puckett is denied, and their petition for adoption is duly dismissed.