J-S49015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  J.K.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  A.S., NATURAL MOTHER | |
| | No. 442 WDA 2017 |

Appeal from the Decree entered January 31, 2017
in the Court of Common Pleas of Jefferson County,
Orphans' Court, at No(s): 57A-2016 O.C.

BEFORE: DUBOW, J., SOLANO, J., and FITZGERALD J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 31, 2017**

Appellant, A.S. ("Mother") appeals from the decree involuntarily terminating her parental rights to J.K.S. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).  We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Mother and K.S. ("Father") were both minors when the Child was born in September 2013.  They were never married.  The next month the Child became the subject of a custody action in which C.S. ("Maternal Grandmother") and L.S. ("Paternal Grandfather") were also named as parties due to the ages of Mother and Father.  Following a pretrial

_____

[*] Former Justice specially assigned to the Superior Court.

conference, the court entered a Stipulation and Order giving Mother and Father shared legal and physical custody of the Child.

One year later, on October 23, 2014, Mother's sister, T.M. ("Maternal Aunt"), received a call from Paternal Grandfather informing her that Mother had been arrested and asking Maternal Aunt to take the Child. Maternal Aunt and her husband took the Child into their home the next day. Two weeks later, Maternal Aunt filed a Petition to Intervene and a Petition for emergency custody at the existing custody docket. The court granted both Petitions, and awarded Maternal Aunt sole physical custody of the Child on November 7, 2014. According to the Order, visitation would be upon agreement of the parties. Because no party has ever filed any subsequent Petition, this custody Order remains in effect.

On December 21, 2016, Maternal Aunt filed a Petition to Involuntarily Terminate the Parental Rights ("TPR") of both Mother and Father pursuant to 23 Pa.C.S. §2511(a)(1),(2),(5),(8), and (b). The Orphans' Court held an evidentiary hearing on January 19, 2017.

Both Mother and Father knowingly waived their right to counsel and appeared *pro se*. **See** N.T., 1/19/17, at 3-4.[1] Maternal Aunt and her

_____

[1] The following colloquy occurred between the Orphans' Court and Mother:

Court:    [D]o you understand you have a right to an attorney?

Mother:    Yes, sir.

*(Footnote Continued Next Page)*

husband,[2] with whom the Child has lived since she was 13 months old, testified in support of the Petition.

Maternal Aunt testified that she brought the Child to visit Mother in prison, and that after Mother was released, Mother saw the Child about once

_(Footnote Continued)_ —————————

Court:     Do you understand if you can't afford an attorney and qualify for court-appointed counsel, one would be appointed for you?

Mother:    Yes, sir.

Court:     Do you understand that when you do that, you're held to have the same standard of knowledge that attorney would have.  So if you make a mistake, you can't later say you didn't know what you were doing.  The mistake would count against you the same as if you had or were an attorney.  Do you understand that?

Mother:    Yes, sir.

Court:     And knowing all those risks – because the ultimate risk in this is that your rights are terminated and you have no further claim to the child.  Do you understand that?

Mother:    Yes, sir.

Court:     Knowing those risks, do you wish to proceed on your own?

Mother:    Yes, sir.

N.T., 1/19/17, at 3-4.

[2] Maternal Aunt and her husband ("Uncle") are the prospective adoptive parents.

a month for a couple of hours each visit. She also testified that Mother spoke to the Child on the phone "once in a while." *Id*. at 17.

Mother testified on her own behalf and informed the court that she had graduated from boot camp, and had secured a job and home in Dauphin County. She testified that before the date of the hearing, she was not ready to take care of the Child, but she is now. *See id*. at 44. She also said she "text[s] at least once a day to talk" to the Child, but her sister tells her frequently that the Child does not want to talk. *Id*. at 45. Mother also acknowledged that Maternal Aunt has done a "very good job" of raising the Child. *Id*.

Maternal Grandmother testified that Mother saw the Child once a month and there was only one time when Maternal Aunt denied a visit. She also stated that Maternal Aunt was doing a good job of raising the Child. *See id*. at 51-2.

Father testified on his own behalf, opining that it would be in the Child's best interest to remain in the custody of Maternal Aunt and her husband. *See id*. at 57-8.

Following the conclusion of this testimony, the Orphans' Court took the matter under advisement. By Opinion and Decree entered on January 31, 2017, the Orphans' Court terminated both Mother and Father's parental rights pursuant to 23 Pa.C.S. §2511(a)(1) and (b).

Mother filed this timely appeal.[3]

**ISSUES ON APPEAL**

Mother raises the following issues for our review:

1. Whether the [Orphans'] Court erred in terminating Mother's parental rights under 23 [Pa.C.S.] §2511(a)(1)?

2. Whether the [Orphans'] Court committed an error and/or abuse of discretion in finding that the termination of Mother's parental rights was in [Child's] best interest in accordance with 23 [Pa.C.S.] §2511(b)?

Mother's Brief at 4.

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71

_____

[3] Father did not file an appeal.

A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

    a)    The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

        (1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of

the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation and paragraph divisions omitted).

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Id.* (internal citations omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." *Id.*

In the instant case, the Orphans' Court properly concluded that Maternal Aunt met the requirements of Section 2511(a)(1). The Orphan's Court found that, in the relevant period prior to Maternal Aunt's TPR petition, indeed for the majority of the Child's young life, Mother's actions toward reuniting with the Child and building a parent-child relationship with her have been minimal. The court explained:

> Mother, too, has failed to perform her parental duties. Certainly, her efforts have exceeded Father's. The Court's job, though, is to evaluate her conduct based on the objective standards articulated above, not to determine whether her deficiencies are less than some other parent who meets the statutory criteria for termination, and that evaluation ends with the conclusion that termination is appropriate.

For at least a year-and-a-half now, Mother has not seen [Child] more than once a month. While she was incarcerated, visits occurred within the confines of the jail, prison, or boot camp facility where she was then housed. Once she was able to travel, the [visits] took place at [Maternal Aunt's] residence and, with the exception of her visit this past November, lasted only a couple of hours. Mother did not ask for more than that. She thus had little opportunity to develop a nurturing, parent-child relationship with [Child] while they were together. Indeed, [Child's] subdued demeanor in Mother's presence indicated that the child was not entirely comfortable being in her company. She may have been familiar with Mother and willing, on occasion, to permit physical contact. [Child] clearly did not identify [Mother] as a source of love and comfort, though.

Orphan's Court Opinion, 1/31/17, at 6.

Moreover, the Orphan's Court further explained that despite the physical distance from the Child, Mother did not avail herself adequately of her ability to communicate with the Child:

Given the opportunity to further foster a relationship through telephone contact, moreover, Mother allowed [Child] to dictate the parameters of their communication. Mother surely recognized that her absence had put a distance between them and, if she did not, should have realized that she, not [Child], was the one who would have to pursue a more intimate connection. Instead of insisting that [Maternal Aunt] summon [Child] so that she could at least learn to recognize [Mother's] voice, though, Mother simply accepted that [Child] did not want to talk most of the time and, as a result, forfeited a ready and convenient avenue for fostering a parent-child relationship with [Child]. As stated in *In re Adoption of Faith M.*, 501 A.2d 1105 (Pa. 1985), though, "'communication and association are essential to the performance of parental duties,'" and because the absent parent and the child are at a disadvantage, the parent "'must make special effort to bridge the gulf of geographic separation and to take affirmative steps to maintain communication and

association with [her] child[.]'" ***Id.*** at 1108-09 (quoting ***In re Adoption of J.R.F.***, 27 Somerset L.J. 298, 304 (Pa.C.P. 1972)). ***See also In re G.P.-R.***, 851 A.2d 967, 976 (Pa. Super. 2004) ("it is incumbent on a parent when separated from [her] child to maintain communication and association with the child. This requires an affirmative demonstration of parental devotion, imposing upon a parent to exert [her]self, to take and maintain a place of importance in the child's life"). Mother made little effort in this case.

Orphan's Court Opinion, 1/31/17, at 7.

Finally, the Orphan's Court assigned little weight to Mother's testimony about her future intentions and her desire to demonstrate an ability to parent:

As for Mother's future intentions, our courts have long maintained that a parent may not preserve her parental rights by waiting for a more convenient time to perform her parental duties and responsibilities. [***See***, ***e.g.***,] ***In re D.J.S.***, 737 A.2d 283, 287 (Pa. Super. 1999). Whereas Mother has failed to take advantage of the opportunities that were available to her earlier, therefore, her purported intention to file a petition to modify custody in January of 2017 does not affect the Court's assessment; the excuse that she knew she was not in a position to assume custody of [Child] carries no weight when she failed to avail herself of the other resources that have been available to her.

Although [Maternal Aunt] has had physical custody of [Child] since October 24, 2014, moreover, Mother retained shared legal custody and, even if she felt that [Maternal Aunt] was excluding her from playing a more active role in [Child's] life, [she] could have petitioned the Court to request increased or unsupervised visitation, more frequent telephone contact, medical updates, etc. As the record plainly shows, however, she was not that invested, and that has been the case well in excess of six months. Accordingly, the evidence clearly supports termination of Mother's parental rights under subsection (a)(1).

Orphan's Court Opinion, 1/31/17, at 7-8.

Mother argues that "[t]he record does not reflect clear and convincing evidence of [her] settled purpose of relinquishing her parental rights or failure to perform parental duties[.]" Mother's Brief at 6. According to Mother, despite the physical distance between her and the Child she would speak to the Child and "every chance [she] had she would drive to see [the Child]." *Id*. at 9. She then cites to her own testimony and asserts that Maternal Aunt stymied her efforts to see the Child. Mother avers that the contact between herself and the Child was "substantial but was hindered by Maternal Aunt." *Id.* at 11.

Mother further argues that her case is similar to the facts of *In re S.S.W.*, 125 A.3d 413 (Pa. Super. 2015), wherein this Court excused a father's failure to enforce his custodial rights through the legal system. Mother asserts that "she had every intention to file for custody of [the Child] but that ultimately Maternal Aunt beat her to the courthouse." Mother's Brief at 9-10.

Finally, Mother asserts that the Orphan's Court erred in failing to consider the "totality of the circumstances" and "instead evaluated her conduct based on the objective standards[.]" *Id.* at 10 (citing *S.S.W.*, *supra*, and Orphan's Court Opinion, 1/31/17, at 6).

Our review of the record refutes Mother's claims. We find that her arguments focus on the credibility of the witnesses. The record supports the Orphans' Courts findings of fact and credibility determinations. We, thus,

accept the court's crediting the testimony of Maternal Aunt over Mother's testimony and that of her witness. **_In re M.G._**, **_supra_**.

Moreover, her reliance on **_S.S.W._**, is inapposite. In that case, the father did not proceed through the legal system because of the existence of a protection from abuse order against him, which he genuinely believed prevented contact with his children. No such impediment exists in Mother's case.

Finally, we read the Orphan's Court's reference to "objective standards above" to be no more than its recognition of case law that requires each parent's relationship with the Child to be considered individually to determine whether they are fulfilling their duties with respect to the Child's physical and emotional needs for love, protection, guidance, and support.

In light of the foregoing, we conclude that the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1).

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that Maternal Aunt met her burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical,

and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the Orphans' Court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In this case, given the Orphan's Court's above comments regarding Mother's minimal efforts to build a parent-child relationship, the court found that Mother does not share a close bond with the Child. Rather, a beneficial bond exists between the Child and Maternal Aunt, as well has her husband, who have provided for the Child's daily needs for the majority of her life. The court explained:

> [Maternal Aunt and her husband] have consistently demonstrated not only the ability, but also the willingness and desire to meet [the Child's] needs, providing her with a loving and stable home and affording her the physical, emotional, and psychological support every child needs. As a result, [the Child] has thrived and continues to thrive in their care, and it is [Maternal Aunt and her husband] whom [the Child] recognizes as her parents-in-fact. Mother and Father are merely peripheral figures in [the

> Child's] life. They are familiar to her, and she is willing to let them into her circle, albeit with some reservations. [the Child] does not share a close bond with either, however, and certainly not a parent-child bond the severance of which would be detrimental to [the Child]. At the same time, the Court can, by terminating Mother and Father's rights, guarantee [the Child] a future with the couple she has come to know as "Mom" and "Dad" and the continuing security of being their legal daughter for the rest of her life.

Orphan's Court Opinion, 1/31/17, at 8 (footnote omitted).

Crediting Maternal Aunt's testimony, the Orphan's Court further opined that the Child's bond with Mother will continue to grow since Maternal Aunt "intends to allow both parents to be part of [the Child's] life[.]" *Id.* at 8 n.3. Nevertheless, the court found it "worth noting, however, that [the Child] would not suffer either way, as the Court's findings make clear." *Id.*

Mother argues that termination of her parental rights would have a negative effect on the Child. She supports this assertion by citing select portions of Maternal Aunt's testimony wherein she stated that the Child calls her "Auntie" and that Child was "clingy" to her (Mother) when they visited. *See* Mother's Brief at 11-12. Once again, the credibility of Maternal Aunt's testimony, and the weight to be given it, are matters exclusively within the province of the Orphans' Court as fact finder. *In re M.G.*, *supra*. As noted above, the Orphan's Court credited Maternal Aunt's testimony that the Child has recently referred to her and her husband as "Mom" and "Dad." *See* Orphan's Court Opinion at 8. We cannot disturb this determination. Thus, Mother's claim fails.

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's determination that Maternal Aunt met her statutory burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017